THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES RONALD ROBERSON, Defendant-Appellant.

Third District    No. 79-395

Opinion filed February 13, 1980.

Michael R. Berz and Alan F. Smietanski, both of Berz, Morgan & Smietanski, of Kankakee, for appellant.

L. Patrick Power, State's Attorney, of Kankakee (Karen L. Boyaris and Gary J. Anderson, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE WEBBER delivered the opinion of the court:

Defendant appeals from a denial of his amended petition for post-conviction relief. Ill. Rev. Stat. 1977, ch. 38, par. 122—1 *et seq.*

Following a bench trial in 1976, in the circuit court of Kankakee County, defendant was found guilty of murder in violation of section 9—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 9—1). A direct appeal was taken to the Appellate Court for the Third District, which affirmed. A single issue was raised on appeal, *viz*, excessiveness of sentence. The instant proceeding followed.

On the original appeal defendant was represented by the appellate public defender for the Third Appellate District. In the instant proceeding, both at the trial and appellate levels, defendant is represented by the same counsel who was appointed to represent him at the original trial. In these post-conviction proceedings defendant raises a single issue, *viz*, incompetency of appellate counsel in the original appeal.

Defendant finds such incompetency in the failure of appellate counsel to raise three issues on the original appeal as follows: (1) the purported failure of the trial court to consider the lesser-included offense of voluntary manslaughter, (2) whether the trial court assumed a position of advocacy against the defendant, and (3) whether the defendant was proved sane beyond a reasonable doubt. We agree with the trial court in these proceedings and affirm.

In view of defendant's contention, this entire proceeding will be governed by the leading case of *People v. Frank* (1971), 48 Ill. 2d 500, 272 N.E.2d 25. In that case the supreme court laid down the rules governing the trial and review of post-conviction petitions which allege the incompetency of appellate counsel. The court noted that it is not the function of the statute to redetermine guilt or innocence and held that the doctrine of waiver ought not to apply where the alleged waiver stems from incompetency of counsel on appeal. The *Frank* court went on to say:

> "We have concluded above that where necessary the Act may serve to vitiate the prejudice of waiver attendant upon incompetence of counsel on appeal, by serving as a vehicle for review of all directly appealable issues. Thus, whether Frank is entitled to review under the Act of the failure-of-proof issue, depends upon the determination of his allegation that failure to raise the issue on appeal constituted incompetence of his appointed counsel. We recognize no obligation of appointed counsel to brief every conceivable issue on appeal. It is not incompetence for counsel to refrain from raising those issues which in his judgment are without merit, unless his appraisal of the merits is patently wrong. [Citations.]" (48 Ill. 2d 500, 504-05, 272 N.E.2d 25, 28.)

The court then stated that it had weighed the merits of the failure-of-proof issue in the proceeding before it and did not find it meritorious.

It therefore becomes the duty of this court in this case to examine the issues as briefed by counsel before this court in order to determine whether they are meritorious. In order to do that, we must have recourse to the report of proceedings at the original trial. Therefore, unless the context clearly indicates otherwise, references to the record herein are references to the proceedings at the original trial.

48

Before examining that original record, we note that there was an evidentiary hearing on the post-conviction petition at which both the appellate public defender and his assistant testified that the matters contained in the post-conviction petition had been considered at the time of the original appeal and rejected as not meritorious. Therefore, in the case at bar we are not dealing with an oversight but with a matter of professional judgment.

Defendant's first contention is that the trial court, sitting without a jury, did not consider the lesser included offense of voluntary manslaughter. Section 9—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 9—2) recognized two varieties of manslaughter. Section 9—2(a) referred to "a sudden and intense passion resulting from serious provocation." (Ill. Rev. Stat. 1975, ch. 38, par. 9—2(a).) Defendant makes no claim that the trial court did not consider this section. Defendant admits that the trial court referred to serious and intense passion in making its ruling.

However, defendant then draws a negative inference that since the trial court made no direct mention or paraphrase of section 9—2(b), it ignored that section. Section 9—2(b) provided:

"A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable." Ill. Rev. Stat. 1975, ch. 38, par. 9—2(b).

Section 7—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 7—1) provided:

"A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony."

It would probably be a sufficient answer to say that the record discloses that section 9—2(b) was specifically drawn to the trial court's attention during closing argument wherein defense counsel stated to the court, "I think it falls square in with sub-section (b), Voluntary Manslaughter." Further, in ruling on defendant's post-trial motion the trial court said, "So far as voluntary manslaughter is concerned, in this case the evidence is clear. The defendant was guilty of murder or nothing."

■■ This was not a jury trial wherein it would be necessary to give the

jury instructions on lesser-included offenses which were possible under the evidence. This was a bench trial before a judge sitting as the finder of fact and of law. It has long been held in this State that submitting propositions of law to a court in a criminal case is improper. (*People v. Johnson* (1919), 288 Ill. 442, 123 N.E. 543; *People v. Chicago, Milwaukee and St. Paul Ry. Co.* (1923), 306 Ill. 486, 138 N.E. 155.) The court is presumed to know the law and to apply it properly without any prompting.

We are not permitted to draw negative inferences from a record. The supreme court stated in *People v. Bassinger* (1949), 403 Ill. 108, 111, 85 N.E.2d 758:

> "It is a well-established principle that all reasonable intendments not contradicted by the record are to be taken in favor of the validity of the judgment, [citations,] and that he who seeks a reversal of a judgment assumes the burden of showing the illegality of the proceeding which resulted in the judgment against him."

In *Flynn v. Vancil* (1968), 41 Ill. 2d 236, 241-42, 242 N.E.2d 237, the supreme court further stated:

> "As stated in the *Union Drainage District* case, 'Error is never presumed by a reviewing court, but must be affirmatively shown by the record.'"

Even if the record did not affirmatively show that the trial court did consider the manslaughter possibility, there is no evidence on which to base such a conviction. The essence of section 7—1 (Ill. Rev. Stat. 1975, ch. 38, par. 7—1) is the *imminent* use of force to prevent *imminent* death or great bodily harm. "Imminent" is a common term which perhaps needs no elaborate explanation.

Defendant would have us equate "imminent" with "impending." The difference is well explained in Webster's Dictionary of Synonyms 430 (1951):

> "*Impending* carries a strong implication that the thing which is likely to occur forecasts itself long enough ahead by some ominous or threatening signs as to keep one in suspense; as an *impending* storm; an *impending* dismissal; * * * *Imminent*, the stronger term, applies to that (especially danger, misfortune, etc.) which threatens to happen immediately, or is on the point of happening; as, 'Three times to-day You have defended me from *imminent* death' (Shak.); * * *."

The record discloses that the defendant and the victim had had a fight in 1970, during which defendant was seriously injured. There was no further confrontation until the date of the killing, April 14, 1976. Several friends of defendant testified that defendant felt some "dudes" were out to get him. These "dudes" included the victim. The only substantiated

conversation between defendant and the victim was by telephone and occurred approximately one month before the killing. The record thus fails to disclose any imminent threat of death of great bodily harm within the meaning of the statute.

■■ In the various cases cited by defendant wherein manslaughter verdicts by a jury were considered, the threat and the danger were immediate, as in *People v. Gaines* (1973), 9 Ill. App. 3d 589, 292 N.E.2d 500, where there had been a five-year history of violence and discord, but on the very day of the shooting the defendant's husband-victim had beaten, choked, cursed, and threatened to kill her. No such situation presents itself in the case at bar. Any potential danger was so remote as to be nonexistent. In fact, defendant sought out the victim for the apparent purpose of doing harm to him. The remoteness of any danger justified the trial court's conclusion that defendant did not have an unreasonable belief of imminent danger.

Defendant's first issue is without merit.

Defendant's second contention is that the trial judge assumed the position of an advocate and exhibited hostility to him at trial. We have carefully examined the record, particularly the specific examples of prejudice to which defendant refers. When these examples are read in context, they demonstrate that defendant's contention is without basis.

■■ Since the matter of hostility was not presented to the trial judge in the first instance, it was waived and could not be argued on appeal unless it could be classified as plain error. *People v. Washington* (1966), 70 Ill. App. 2d 452, 217 N.E.2d 356.

The rule is stated in *People v. Palmer* (1962), 26 Ill. 2d 464, 470, 187 N.E.2d 236, 240, *overruled on other grounds, People v. Nunn* (1973), 55 Ill. 2d 344, 347-48, 304 N.E.2d 81, 84, as follows:

> "Where the judge is the trier of facts, his interrogation of witnesses to clear up points insufficiently developed by counsel is proper where such interrogation is related to the issues involved."

As pointed out in *People v. Cofield* (1973), 9 Ill. App. 3d 1048, 293 N.E.2d 692, the trial judge's discretion in this matter is not unlimited and he must be fair and impartial. In *Cofield* the appellate court found that the trial court had far exceeded those bounds by calling nearly all the witnesses, conducting extensive cross-examination of them and intimidating one of them by threatening to send her to the Audy Home. No such grotesque situation presents itself here.

This trial involved extensive psychiatric testimony. Of all expert testimony this is perhaps the most difficult for any trier of fact, be it judge or jury, to comprehend, if, for no other reason, the obscure *argot* employed by that profession. Our examination of the record reveals that

the trial judge was engaged in an effort only to clarify the testimony and to channel the rather rambling questions and answers being received.

Defendant further complains that the trial judge took only 20 minutes for his decision. Any experienced trial judge is well aware of the value of immediate ruling rather than taking under advisement. In the former case the evidence is fresh in mind as well as the demeanor of the witnesses. In the latter case, memory tends to fade and other cases tried subsequently interpose their records, oftentimes making for confused recollection. As to the 20-minute interval, we know of no rule of law which requires any specific amount of cogitation. A trial judge may reflect on a case *durante bene placito.*

■ The record does not disclose plain error and the second issue is without merit.

Thirdly and lastly, defendant contends that he was not proved sane beyond a reasonable doubt and that this should have been an issue on appeal.

The law is stated by the supreme court in *People v. Ward* (1975), 61 Ill. 2d 559, 568, 338 N.E.2d 171, 175:

> "Finally defendant has argued that he was not proved sane beyond a reasonable doubt. The record presents a question of fact to be determined by the trial court. Its decision will not be reversed unless the determination is so improbable or unsatisfactory as to raise a reasonable doubt as to defendant's sanity. [Citation.] While defendant's criminal conduct seems bizarre, this does not necessarily indicate that the defendant was insane. [Citation.] Having considered the record, we find the trial court properly held that defendant was sane at the time he committed the offense."

As mentioned above, there was extensive psychiatric testimony in this trial. The State presented one psychiatrist as well as lay witnesses concerning defendant's sanity. The defendant presented two psychiatrists who were unable to agree as well as the testimony of defendant's friends who described his conduct and attitude from the time of the original fight with the victim in 1970, to the time of the killing in 1976.

■ It was preeminently the function of the trial court to weigh this *melange* of opinion testimony and to consider it against the background of the objective facts and circumstances surrounding the offense. (*People v. Burress* (1971), 1 Ill. App. 3d 17, 272 N.E.2d 390.) It is not our function to weigh such testimony *de novo* unless it is "so improbable or unsatisfactory as to raise a reasonable doubt" (*Ward*). Our review of the record does not place it in that category.

Defendant's third issue is without merit.

We conclude that none of defendant's issues contains merit and therefore it was not incompetent for appellate counsel, after considering them, to reject them on appeal. The findings and judgment of the circuit court of Kankakee County are therefore affirmed.

Affirmed:

TRAPP and GREEN, JJ., concur.