THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSE SOSA, JR., Defendant-Appellant.

Second District   Nos. 2—88—1105, 2—88—1268 cons.

Opinion filed March 30, 1990.

Robinson & Skelnik, of Elgin, and Frank J. Giampoli, of Self & Giampoli, of Aurora (Mary Robinson, of counsel), for appellant.

Gary V. Johnson, State's Attorney, of Geneva, and James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Colleen M. Griffin, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

In appeal No. 2—88—1105, defendant, Jose Sosa, Jr., was indicted in the circuit court of Kane County on two counts of attempted first-degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 8—4) and two counts of armed violence (Ill. Rev. Stat. 1987, ch. 38, par. 33A—2). Following a bench trial, he was found guilty of one count of attempted first-degree murder and one count of armed violence, which was subsequently vacated, and sentenced to 10 years' imprisonment and fined $5,000 on the attempted murder conviction.

In appeal No. 2—88—1268, the State filed a petition to revoke defendant's probation on a separate aggravated battery conviction based on the attempted murder conviction, which was granted, and he was sentenced to a five-year concurrent term of imprisonment.

Defendant raises the following issues in the consolidated appeals: (1) whether he was denied his right to a jury trial because he was compelled to waive his right to a jury after the trial court denied his motion for a mistrial based upon the State's failure to disclose a statement made by defendant to the arresting officer; (2) whether the trial judge misapplied the law and failed to find defendant had the intent to kill in finding defendant guilty of attempted murder; (3) whether the trial court abused its discretion in imposing a $5,000

fine; and (4) whether the revocation of defendant's probation, premised upon his attempted murder conviction, must be reversed.

The victim, Victor Barrera, testified that on July 26, 1987, at about 5 to 6 p.m., he was a passenger in a car driven by a friend named Juan Anaya. As they drove down a street in Aurora, Illinois, he observed defendant, who was sitting on a bicycle talking to a couple of girls and blocking their path. Juan asked defendant to move, and defendant started using profanity towards Barrera and Juan. Defendant then kicked Juan's vehicle and grabbed Barrera by the hair.

Barrera observed what appeared to be a screwdriver in defendant's hand and took a small screwdriver with him as he left the vehicle. As Barrera exited, he heard something go by his ear, felt a buzzing in his ear, and felt blood running down his neck. He then ran down a side street, observed a car with its trunk lid open, and grabbed a tire iron from the trunk.

Barrera then began chasing defendant on foot. As Barrera chased defendant, defendant turned and, at a distance of about eight steps, fired a pistol at him, striking him in the groin area. After Barrera was shot in the groin, he continued to chase defendant. Defendant got into a vehicle driven by a female and drove away.

Dr. Abraham Steinberg, the physician who treated Barrera in the emergency room, stated that the bullet entered Barrera where his penis joins his scrotum, which means the bullet entered from the front of his scrotum. There were no other signs of damage to Barrera's body possibly caused by a bullet except the injury to his ear.

Juan Anaya, who was driving the vehicle in which Barrera was a passenger, essentially corroborated Barrera's testimony up to the point Barrera exited the vehicle. Anaya did not observe the subsequent encounter between Barrera and defendant but did hear a shot fired.

Salvador Gallegos, who was present at the time of the encounter, stated that he observed a group of people gathered together as though there was going to be a fight. He observed Barrera running after another person, saw the other person gesture as if shooting a gun, and heard a shot. He did not see a gun in the other person's hand, and both Barrera and the other individual continued running after the shot was fired. He did not observe Barrera with anything in his hands. He also heard a second shot.

Officer Virgil Null of the Aurora police department observed a tire iron lying next to Barrera, who was lying in the street when Null arrived.

Officer Joseph Ramos of the Aurora police department testified regarding a photographic array displayed to Barrera when he was in the hospital. Barrera quickly pointed to defendant as the man he chased on the date in question and indicated that he was positive of his identification.

Officer Kevin Baxter, another Aurora police officer, testified regarding his arrest of defendant four days after the occurrence pursuant to an arrest warrant issued as a result of this incident. According to Baxter, he observed defendant riding his bicycle, and defendant, who knew Baxter was a police officer, looked at him and began peddling faster. Baxter gave chase in his squad car, and defendant entered a home. After back up officers arrived, Baxter and several officers went and knocked on the door of the home, and one of its occupants answered. Baxter explained that they were going to search for defendant, and the occupant went into the home and returned with defendant.

The prosecutor then asked Baxter, "What, if anything, happened at that time?" Baxter responded, "At that time, I advised him we had a warrant for attempted murder, handcuffed him, and he told me [he] would have shot me if he had his chance." Defendant objected and moved for a mistrial. In doing so, he argued that the State's failure to reveal the statement prior to trial constituted a discovery violation and that the statement was irrelevant and inadmissible. The trial court sustained the objection but refused to grant a mistrial. Rather, it struck the testimony and instructed the jury to disregard it.

The following morning defendant renewed his motion for mistrial. The assistant State's Attorney stipulated that she became aware of the statement defendant made to Baxter about one hour before Baxter testified and that she forgot to advise defense counsel of the statement. The trial court again denied defendant's motion for a mistrial. Defendant then asked to waive his right to a jury trial. The trial court, after admonishing defendant of his right to a jury trial, granted defendant's request and dismissed the jury.

Robert Hunton, a forensic scientist employed by the State of Illinois, testified that the bullet recovered from Barrera's scrotum was partially flattened. According to Hunton, a bullet would have to have hit a hard surface to have flattened and striking soft flesh would not cause it to flatten. Hunton further elaborated that the bullet could be flattened by striking bone, a tire iron, or upon being removed from the body.

At the conclusion of the State's case, defendant moved for a di-

rected finding on all four counts, and the trial judge granted the motion as to the armed violence count premised upon Barrera being shot in the ear.

Officer Ramos, testifying for defendant, stated that he interviewed Barrera at the hospital on the date of the incident and that Barrera told him that defendant shot him in the ear as he exited the vehicle and that he reached in and grabbed a tire iron and chased defendant. According to Ramos, Barrera told him that defendant shot at him several times, hitting him once in the groin.

Defendant testified that he was blocking traffic while talking to his girlfriend's sister and that he and the occupants of a vehicle began cussing at each other. Defendant denied kicking the car and stated that Barrera came out of the car carrying a screwdriver. According to defendant, Barrera was swinging the screwdriver at him, and defendant picked up a rock, threw it, and hit Barrera in the left ear.

Barrera then got back in the car, and the car drove off. Defendant went over to the corner because he was angry. Defendant then conversed with his girlfriend, who indicated that several guys were grabbing tire irons from the trunk of a car. Defendant then observed Barrera running towards him with a tire iron. Defendant began running, and Barrera chased him. As Barrera was catching up to him, defendant heard two shots fired. Defendant kept running, got into a car driven by his girlfriend's friend, and took off. Defendant denied ever firing a gun at Barrera.

Defendant's girlfriend, Martha Jimenez, testified that she told defendant that she observed three men grab a tire iron and screwdriver from the trunk of a car. She then observed defendant running. Jimenez and her girlfriend followed defendant in their car as he was being chased by one of the men whom she had seen removing the tire iron and screwdriver from the trunk of a car. As they were driving along, she heard a shot fired from the right side of the street, but defendant was running along the left side of the street. Defendant continued running and jumped into the car. Jimenez did not observe defendant carrying any weapon or gun. Nor did she observe him turn and shoot at the person chasing him. Nancy Olvera, Jimenez's girlfriend, and the driver of the vehicle that defendant entered after being chased, essentially corroborated Jimenez's testimony.

The trial court found defendant not guilty of attempted first-degree murder based on the alleged shooting of Barrera in the ear. The court further found defendant guilty of attempted first-degree mur-

der and armed violence based on the shooting of Barrera in the groin.

At the sentencing hearing, defense witnesses testified that defendant lived with his parents and had been unemployed for about two years. Defendant had three children with his girlfriend and contributed some money for their support when he was working. The trial judge sentenced defendant to 10 years' imprisonment and a $5,000 fine. With respect to the fine, the trial judge commented, "I just took your bond is what I did. You posted bond. I just took it for the fine."

Defendant filed a motion to reconsider the sentence, contending, *inter alia*, that the trial court had imposed a fine without considering defendant's financial resources or future ability to pay. At a hearing on this motion, defendant's mother testified that she posted bail of $5,000 for defendant taken from her own bank account. The trial court denied the motion to reconsider.

Defendant's first contention essentially is that he was denied his right to a jury trial because of Officer Baxter's testimony that defendant told Baxter that he would have shot Baxter if he had the chance, a statement which the State failed to disclose to defendant. In this regard, he argues that the trial court erred in refusing to grant a mistrial requested by him and he was given no choice but to waive a jury rather than continue the jury trial before jurors who were tainted by Officer Baxter's testimony. The State, while not addressing the compelled waiver of jury trial theory, apparently concedes that it violated discovery by not advising defendant of the statement, but responds that any prejudice which resulted from Baxter's testimony was alleviated when the trial court sustained defendant's objection, struck the testimony, and instructed the jury to disregard it.

Defendant, after having his motion for a mistrial denied a second time, waived his right to a jury trial, and the trial was completed before the judge only. As the trial court noted, this is a highly unusual procedure. The State, however, has not raised any issue in its appellate brief addressing the merits of defendant's claim that the trial court's denial of a mistrial under the circumstances here prevented defendant from having a jury trial. It is nevertheless arguable that defendant waived a jury and no act of the court prevented the defendant from having a jury trial. (*Cf. People v. Brownell* (1980), 79 Ill. 2d 508, 522, 404 N.E.2d 181.) Obviously, defendant's waiver of a jury trial would obviate any argument he might have on appeal based *solely* on the erroneous denial of the mistrial for failure to disclose

defendant's statement to Officer Baxter, as there would be no prejudice from that statement in a bench trial where the trial court excluded the statement from evidence. Since the State does not challenge the foundation on which defendant premises the issue on appeal, we shall not resolve this question on a basis not briefed by either party and will only determine whether, under the circumstances in this record, the trial court's actions in admonishing the jury to disregard the evidence adequately eliminated any prejudice such that defendant was not compelled to waive his right to a jury trial to avoid a speculative, prejudiced jury's verdict of guilty against him.

■■ Supreme Court Rule 415 (107 Ill. 2d R. 415) provides several sanctions for the violation of a discovery rule. (*People v. Morgan* (1986), 112 Ill. 2d 111, 135, 492 N.E.2d 1303.) A trial court may order disclosure of the material, grant a continuance, exclude the evidence, or enter such order as seems just under the circumstances. (107 Ill. 2d R. 415(g); *Morgan*, 112 Ill. 2d at 135, 492 N.E.2d at 1312.) Declaring a mistrial is a drastic sanction, and the court can, by sustaining an objection and instructing the jury to disregard an improper remark, usually correct any error. (*Morgan*, 112 Ill. 2d at 135, 492 N.E.2d at 1312; see also *People v. Miller* (1983), 96 Ill. 2d 385, 395, 450 N.E.2d 322.) The correct sanction to be applied is left to the trial court's discretion, and the judgment of the trial court is given great weight. *Morgan*, 112 Ill. 2d at 135, 492 N.E.2d at 1312.

■■ Whether a new trial is warranted by the discovery violation depends on several factors. (*Morgan*, 112 Ill. 2d at 135, 492 N.E.2d at 1312.) The closeness of the evidence, the strength of the undisclosed evidence, the likelihood that prior notice could have helped the defense discredit the evidence, the feasibility of a continuance, and the willfulness of the State's failure to disclose are all factors which must be considered in deciding what discovery sanction to impose. *People v. Weaver* (1982), 92 Ill. 2d 545, 560, 442 N.E.2d 255.

Although the evidence in this case was not overwhelming as to defendant's guilt, it was not so close as to require the granting of defendant's motion for mistrial. The evidence establishes that defendant was chased by Barrera, that a shot was fired, and that Barrera was struck by a bullet during the chase. Although defendant and his witnesses testified that he did not shoot Barrera, their testimony that the shot came from the right of Barrera and defendant is inconsistent with the treating doctor's testimony that the bullet entered Barrera's scrotum from the front and there were no other bullet wounds. Barrera, on the other hand, testified that defendant turned and shot him as he was chasing defendant. We note, too, that the undisclosed state-

ment does not strengthen the State's case as it was unrelated to the events surrounding the shooting.

Furthermore, there is no evidence that the State wilfully failed to disclose the statement to defendant. According to the stipulation of the assistant State's Attorney, she found out about the statement only one hour prior to Baxter testifying and simply forgot to advise defendant. There is no evidence that she intentionally withheld the statement. Although a witness testified in post-trial proceedings that Baxter stated after leaving court that he got it in, we do not find that to be evidence that the prosecutor herself intentionally elicited the statement.

We also believe that it is necessary, in determining what degree of prejudice, if any, defendant suffered as a result of the State's failure to disclose defendant's statement to Baxter, to consider whether the statement was admissible or inadmissible. If the statement was inadmissible, the prejudice suffered by defendant in being precluded the opportunity to keep the evidence out would necessarily be greater than if the evidence was admissible and would have otherwise been presented to the jury absent the discovery violation.

At oral argument, defendant maintained that the statement at issue was inadmissible because its probative value was outweighed by its prejudicial impact. The statement that defendant would have shot Baxter if he had the chance is prejudicial as it shows a violent propensity on the part of defendant as well as a willingness to resist police authority.

On the other hand, the statement is not relevant to the issue of defendant's guilt. The statement by itself does not show any consciousness of guilt, as urged by the State. Accordingly, there is no proper basis for admission of the statement in this case.

Additionally, prior notice of the statement would likely have helped defendant discredit the evidence. Defendant could have moved *in limine* to keep the inadmissible evidence out or, at the very least, could have anticipated its introduction and entered a timely objection.

■ Nevertheless, when we consider all of the factors relevant to the question of what prejudice defendant suffered as a result of the State's failure to disclose the statement, we do not consider the denial of a mistrial to be an abuse of discretion under these circumstances, particularly where the trial court promptly and thoroughly instructed the jury to disregard the statement.

We next address defendant's contention that the trial judge misapplied the law in finding him guilty of attempted murder. The trial judge stated, *inter alia*:

"Now, as to Count 2, attempt murder, where he's charged to have performed a substantial step toward the commission of the offense, in that he fired a firearm at Victor Barrera striking him in or about the groin. We know somebody fired a shot, we know it struck him in or about the groin, we know that if anybody fires a weapon at somebody, that there's a strong possibility of great bodily harm or death, certainly is a substantial step toward the commission of a murder. The only issue here is who fired that shot."

Defendant argues that this language indicates that the court failed to find that he had the requisite intent to kill, a necessary element of attempted murder.

While we agree with defendant that intent to kill is necessary to establish the offense of attempted murder (see *People v. Mitchell* (1984), 105 Ill. 2d 1, 9, 473 N.E.2d 1270), we do not interpret the trial judge's comments to indicate a contrary understanding. The trial judge appears to have commented regarding the factual issue of whether defendant fired the shot. His comments do not explicitly state that he did not make a finding as to whether defendant had the intent to kill Barrera at the time he shot him.

■■ ■ Furthermore, the fact that the trial judge did not specifically mention his finding as to defendant's intent to kill does not establish that he made no finding in that regard. (*Cf. People v. Lerch* (1985), 134 Ill. App. 3d 643, 651-52, 480 N.E.2d 1253.) Moreover, the trial judge is presumed to know the law, and such presumption is rebutted only when the record affirmatively shows the contrary. (*People v. Smith* (1989), 178 Ill. App. 3d 976, 984, 533 N.E.2d 1169; see *People v. Gilbert* (1977), 68 Ill. 2d 252, 258-59, 369 N.E.2d 849.) Here, there is no affirmative evidence that the trial judge did not make a finding that defendant had the intent to kill. As we are not permitted to draw negative inferences from the record (*People v. Roberson* (1980), 83 Ill. App. 3d 45, 49, 403 N.E.2d 490), it cannot be said on this record that the trial judge misapplied the law and failed to find that defendant had the intent to kill.

■■ ■ Defendant next contends that the trial judge erred in imposing a fine without considering defendant's own financial resources and future ability to pay as required by section 5—9—1(d)(1) of the Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, par. 1005—9—1(d)(1)). Defendant maintains that the trial judge merely considered that a bail deposit was posted and could be forfeited to satisfy the fine, and because bail was posted by his mother, it does not represent *his* financial resources or future ability to pay the fine. Defendant

does not dispute the proposition that the bail deposit may be used to satisfy a properly imposed fine regardless of who posted bail. However, he maintains that the availability of bond money is not determinative of whether the fine is proper in the first place.

The State responds that the trial court heard evidence of defendant's financial resources and that the record supports the imposition of a fine. The only evidence the State points to in this respect is testimony that defendant supported his children and that he did not have any debts. The record shows, however, that defendant had been unemployed for two years and lived with his parents and does not show that the support he provided his children was substantial during this period. The State notes that the trial court suggested that defendant might have given his mother the money she used for his bail. There is no support for this supposition. The record must show sufficient facts available to the trial court to determine the issue of imposition of a fine and the amount thereof. (*People v. Bergman* (1984), 121 Ill. App. 3d 100, 112, 458 N.E.2d 1370.) The $5,000 fine is not supported by the record, and we do not believe the trial court properly considered defendant's financial resources. Accordingly, the $5,000 fine is vacated, and this cause is remanded for the limited purpose of conducting a hearing to determine defendant's ability to pay a fine and, if so, the amount of the fine. See *People v. Echols* (1986), 146 Ill. App. 3d 965, 977-78, 497 N.E.2d 321; *People v. Waters* (1985), 136 Ill. App. 3d 858, 862, 483 N.E.2d 1061.

For the foregoing reasons, we affirm that part of the judgment of the circuit court of Kane County finding defendant guilty of attempted murder and sentencing him to 10 years' imprisonment, vacate the fine, and remand. We affirm the separate judgment revoking his probation.

No. 2—88—1105, Affirmed in part; vacated in part and remanded.
No. 2—88—1268, Affirmed.

GEIGER and INGLIS, JJ., concur.