# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Hernandez*, 2012 IL App (1st) 092841

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARIA HERNANDEZ, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-09-2841 |
| Filed | March 23, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The Illinois Identity Theft Law requires proof that defendant knew the personal identifying information used to fraudulently obtain credit, money or other valuable property belonged to "another person," and the trial court's failure to consider that essential element in defendant's prosecution for identity theft based on her use of another person's social security number to obtain credit to purchase a car was not harmless error where the evidence of defendant's knowledge was contradicted and not overwhelming; therefore, her conviction was reversed, but since the evidence was sufficient to prove she signed the credit application using the social security number, the cause was remanded for a new trial. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 06-CR-21563; the Hon. Joseph G. Kazmierski, Judge, presiding. |
| Judgment | Vacated and remanded. |

| Counsel on Appeal | Shannon M. Lynch, of Law Office of Shannon M. Lynch, of Oak Park, for appellant. |
| | |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Michelle Katz, and Brian K. Hodes, Assistant State's Attorneys, of counsel), for the People. |
| | |
| Panel | PRESIDING JUSTICE EPSTEIN delivered the judgment of the court, with opinion. |
| | Justice Howse concurred in the judgment and opinion. |
| | Justice McBride concurred in part and dissented in part, with opinion. |

**OPINION**

¶ 1    Following a bench trial, defendant, Maria Hernandez, was convicted of identity theft (720 ILCS 5/16G-15(a) (West 2008)). On August 21, 2009, the trial court sentenced defendant to a two-year term of probation. Defendant now claims: (1) the State failed to prove that she was guilty beyond a reasonable doubt where the State failed to prove that she knew the social security number she used to purchase a vehicle belonged to another person; and (2) there was insufficient evidence that defendant was the same person who signed the credit application containing another person's social security number. For the reasons below, we vacate and remand.

¶ 2                                    BACKGROUND

¶ 3    On November 20, 2008, Maria Hernandez was indicted on one count of identity theft in violation of section 16G-15(a) of the Criminal Code of 1961 (720 ILCS 5/16G-15(a) (West 2008)). Defendant waived her right to a jury trial. At the bench trial, the State produced four witnesses: Maria Nodarse, Ray Santiago, Detective Robert Ross, and Detective Jude Martinez.

¶ 4    Maria Nodarse testified regarding her social security number which we shall refer to as "Maria Nodarse's social security number." Nodarse testified that the Internal Revenue Service contacted her in the summer of 2008 regarding a discrepancy. She obtained a copy of her credit report and contacted the Chicago police department. Nodarse testified that she had never been to a car dealership named "Sierra" nor had she ever purchased a Mitsubishi Eclipse. She had never met defendant and did not know anyone by the name of Maria Hernandez.

¶ 5    Ray Santiago, a salesman at Sierra Auto Group, testified that an individual named "Maria

Hernandez" purchased a 200l Mitsubishi on September 2, 2006. Maria Hernandez also completed a credit application for Turner Acceptance Corporation. Santiago testified that the purpose of the credit application was to determine whether a person had sufficient credit to purchase a car. Maria Hernandez used two social security numbers, one of which was Maria Nodarse's social security number. Santiago testified that if questions arose when they checked the credit application, "they ask[ed] the customer if they use[d] another social security number" and Santiago had "seen times where somebody ha[d] two social security numbers."

¶ 6    The credit application completed by Maria Hernandez consisted of two pages, which were duplicate copies of a standardized form. Both pages were signed by Maria Hernandez. The first page lists Maria Hernandez's driver's license number, date of birth (December 12, 1981), home address, employer (Marriott Hotel in Chicago), and occupation (housekeeping), but lists Maria Nodarse's social security number. The second page lists the second social security number and is otherwise incomplete.

¶ 7    After Turner Acceptance Corporation approved Maria Hernandez's credit application containing Maria Nodarse's social security number, Sierra Auto Group generated a bill of sale for the Mitsubishi Eclipse. The bill of sale also contains Maria Nodarse's social security number, but lists Maria Hernandez as the purchaser. On September 2, 2006, Maria Hernandez signed this bill of sale contract and completed the purchase of the vehicle. Santiago testified that he did not remember if he saw Maria Hernandez drive away in the vehicle.

¶ 8    Detective Robert Ross testified that in 2008 he was assigned a case of identity theft with a victim named Maria Nodarse. Detective Ross received documentation from both Ms. Nodarse and Turner Acceptance Corporation. Based on that information, he determined a possible place of employment and contacted the Marriott Hotel. He then determined the name of a possible suspect, Maria Hernandez. He contacted Maria Hernandez's brother and left a message that he wanted to speak to her.

¶ 9    On October 29, 2008, Maria Hernandez met Detective Ross at Area 3 headquarters. Detective Ross identified defendant in court as the person he met with that day. Detective Ross testified that defendant spoke primarily Spanish and Detective Jude Martinez assisted with translation "to determine if Miss Hernandez had purchased a vehicle from Sierra Motors and did she provide the social security number of the victim." After the interview, the detectives arrested defendant.

¶ 10   Detective Jude Martinez also identified defendant in court as the person whom he and Detective Ross had interviewed. Detective Martinez testified that defendant said she purchased a Mitsubishi vehicle from Sierra Auto Group using the social security number listed on the credit application and the purchase agreement (*i.e.*, Maria Nodarse's social security number). When Detective Martinez asked her how she obtained that social security number, defendant responded that she "made it up." When Detective Martinez asked her about the second social security number listed on the credit application, she stated that she had obtained that number from her mother when she first entered the country and "she was not sure if that was a good social security number or not."

¶ 11     After the State rested, defendant moved for a directed finding in which she argued the State did not prove that she knew she used another person's identity. The trial court denied the motion. Defendant elected not to testify and did not present any evidence on her behalf. The trial court found defendant guilty. The court subsequently denied defendant's posttrial motion to reconsider. After her conviction, defendant was sentenced to two years' probation. Defendant now appeals.

¶ 12                                    STANDARD OF REVIEW

¶ 13     In evaluating a challenge to the sufficiency of the evidence, a reviewing court determines "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Montoya*, 373 Ill. App. 3d 78, 80 (2007) (holding that evidence was sufficient to support conviction for identity theft). The standard for reviewing the sufficiency of the evidence in a bench trial is the same as in a jury trial and is applied by the reviewing court regardless of whether the evidence is direct or circumstantial. *People v. Norris*, 399 Ill. App. 3d 525, 531 (2010). "We will not reverse a conviction unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the accused's guilt." *People v. Zizzo*, 301 Ill. App. 3d 481, 486 (1998).

¶ 14                                         ANALYSIS
¶ 15                    I. Whether the State Proved That Defendant Knowingly Used
                              Personal Identifying Information of Another Person

¶ 16     Defendant first claims that the State failed to prove that she was guilty beyond a reasonable doubt of identity theft, pursuant to section 16G-15(a)(1) of the Illinois Identity Theft Law (720 ILCS 5/16G-15(a)(1) (West 2008)), because the State failed to prove that she *knowingly* used the identity of another person. There are two aspects to defendant's first argument, however, as summarized in her request for relief:

> "Appellant respectfully requests that this Court hold that the State is required under the statute to prove that the defendant knew she was using the identity of another person. The appellant *further* asks this Court to apply the facts of this case to that requirement and to find the defendant not guilty." (Emphasis added.)

Thus, the instant case differs from the typical case involving the sufficiency of the evidence and calls for a different analysis. In the usual case, the *only* task for the reviewing court involves the second aspect of defendant's argument, *i.e.* applying the facts of the case to the statutory requirements to determine the sufficiency of the evidence. The instant case necessarily involves a threshold determination of what elements the Illinois Identity Theft Law requires the State to prove, which calls for statutory interpretation. At the time of trial, the Illinois identity theft statute had not been interpreted by reviewing courts in terms of what elements the State was required to prove and defendant now asserts that the trial court misinterpreted the statute. She argues that "the trial court erred in rejecting defendant's argument that 720 ILCS 5/16G-15(a)(1) requires the State to prove that defendant knew the

Social Security number actually belonged to another individual."

¶ 17    Generally, when this court reviews the sufficiency of the evidence, there have been either correct jury instructions on the elements of the offense or (in the case of a bench trial) no indication that the trial judge failed to consider the required elements of the offense. Here, however, there is an indication that the trial judge failed to consider the required elements of the offense. Defendant argues that "720 ILCS 5/16G-15(a)(1) requires the State to prove that defendant knew the Social Security number actually belonged to another individual." More importantly, defendant also asserts on appeal that "the trial court erred in rejecting defendant's argument."

¶ 18    Thus, although defendant's argument "may be characterized broadly as concerning the sufficiency of the evidence," her "argument on this point has two facets." *Wilson v. United States*, 250 F.2d 312, 314, 324 (9th Cir. 1957). We recognize that *Wilson* is an older case from an outside jurisdiction, but cite it only because its procedural posture was remarkably similar to that of the instant case. *Wilson* also involved a bench trial in which the defendant contended that the trial court "applied an erroneous standard with respect to the subjective state of mind requisite to culpability under [the relevant statute], and further, that under the proper criterion the evidence [was] not sufficient to support *** the judgment of conviction." *Id.* at 314. Similarly, in the instant case, the "two facets" of defendant's sufficiency argument are: (1) the trial court misconstrued the Illinois Identity Theft Law (720 ILCS 5/16G-1 *et seq.* (West 2008)) and the required elements of the offense ("the trial court erred *in rejecting defendant's argument that 720 ILCS 5/16G-15(a)(1) requires the State to prove* that defendant knew the Social Security number actually belonged to another individual" (emphasis added)); and (2) under the proper interpretation of the statute, the State never proved defendant guilty because it failed to prove an essential element ("that defendant knew the Social Security number *actually* belonged to another individual" (emphasis added)).

¶ 19                    A. Issues Properly Before This Court

¶ 20    Before we address the proper construction of the statute, we acknowledge that the dissent has strongly suggested that we are "*sua sponte*" addressing a question that has not been presented by the parties. The dissent does not disagree that the interpretation of the Illinois Identity Theft Law is before this court but states that defendant has not raised the issue "that the trial judge misunderstood or misapplied the law." *Infra* ¶ 95. To the contrary, in her brief, defendant has unequivocally stated: "At issue is whether the trial court erred in rejecting the defendant's argument that 720 ILCS 5/16G-15(a)(1) requires the State to prove that the defendant knew the Social Security number actually belonged to an individual." The dissent concludes that "[t]his one line in the brief is not sufficient to preserve this claim of error." *Infra* ¶ 98.

¶ 21    Defendant, however, has not devoted merely "one line" in her brief to the issue. After raising the "issue" of whether the trial court erred in rejecting her argument as to what the statute required the State to prove, defendant states that "[t]he answer to this issue is found in the recent United States Supreme Court opinion of *Flores-Figueroa v. United States*, 556 U.S. 646, 129 S. Ct. 1886, 173 L. Ed. 853 (2009)." Despite the procedural dissimilarity

between *Flores-Figueroa* and the instant case, the "issue" raised by defendant is the precise issue that the United State Supreme Court addressed in *Flores-Figueroa* when discussing a comparable federal statute. Moreover, this issue of "what" the statute required the State to prove was raised by defendant in the trial court (at the close of the State's case, a second time in closing argument and a third time in a posttrial motion), was considered by the trial court, and is now again raised on appeal. By devoting a substantial portion of her brief to this issue and citing the *Flores-Figueroa* Court's decision interpreting the comparable statute, defendant presented a sufficient argument and provided support for her argument.

¶ 22    Defendant's argument is sufficient to avoid forfeiture. An issue is not forfeited so long as it is argued sufficiently in the argument section of the brief. *Collins v. Westlake Community Hospital*, 57 Ill. 2d 388, 392 (1974); see also *People v. Robinson*, 163 Ill. App. 3d 754, 775 n.2 (1987) (concluding that an issue was not forfeited where it was not set forth in either the " 'Points and Authorities' " or " 'Statement of Issues' " section of the brief because it "was argued, with citations to authority, on two pages in the body of [the] brief"); *Department of Conservation v. First National Bank of Lake Forest*, 36 Ill. App. 3d 495, 505 (1976) ("it is the content of the Argument in appellant's brief which determines the propositions relied upon in support of the appeal"). Pursuant to Illinois Supreme Court Rule 341(h)(7) (eff. July, 1, 2008), defendant presented a sufficient argument on this point.

¶ 23    As evidence that defendant did not preserve the issue of whether the trial court misinterpreted the law, the dissent states "[a] review of the first 17 pages of the State's brief also supports the view that the only issue before us is the sufficiency of the evidence." *Infra* ¶ 92 . Nonetheless, the State never asserted that this issue was forfeited. More importantly, the State devotes a substantial portion of its brief, pages 17 through 23, to defendant's argument regarding what elements the statute required the State to prove. The State acknowledges that "[a]s she did before the trial court, defendant relies on the *Flores-Figueroa* [case]." The State further acknowledges: "in her brief, defendant argues that *Flores-Figueroa*'s interpretation of the federal [statute] requires the same interpretation of the word 'knowingly' as used in Illinois statute." Moreover, *before* it addresses the sufficiency of the evidence claims, the State addresses defendant's argument on appeal and the State correctly concedes: "The trial court rejected defendant's interpretation of the statute." As to the merits of defendant's claim, the State contends that the Illinois statute "differs in several critical respects" from the federal statute. Thus, we conclude that the issue of the trial court's interpretation of the identity theft statute is properly before this court.

¶ 24    We additionally note that defendant properly raised the issue in the trial court. In her "Motion to Reconsider Verdict [*sic*]" defendant raised the issue of the correct statutory interpretation, and the statutory *requirement* of knowledge that the information belonged to "another person" and did not merely raise the issue of *proof* of that knowledge. As the State also acknowledges, "the trial court heard the defense's motion to reconsider the verdict and *counsel again argued* that *Flores-Figueroa*'s construction of the federal [statute] applied to the Illinois [statute]." (Emphasis added.) Thus, the trial court was aware, as was the State, that defendant's argument that the trial court misinterpreted the statute was raised in the "Motion to Reconsider Verdict [*sic*]."

¶ 25    The issue of "whether the trial court erred in rejecting the defendant's argument that 720

-6-

ILCS 5/16G-15(a)(1) *requires the State to prove* that the defendant knew the Social Security number actually belonged to an individual" is properly before this court. (Emphasis added.) We now turn to the merits.

¶ 26                              B. Illinois Identity Theft Law

¶ 27    In order to address defendant's argument that she was not proven guilty beyond a reasonable doubt where the State failed to prove that she knowingly used the identity "of another person," we must determine whether this is an essential element required by the Illinois Identity Theft Law (720 ILCS 5/16G-15(a)(1) (West 2008)). Defendant has argued that the trial court erred in rejecting her interpretation of the statute. Thus, if we determine that an essential element of the crime is the "knowledge" that information used actually belonged to another person, we must determine whether the trial court similarly concluded that knowledge was an element the State must prove.

¶ 28    The interpretation of this statute is an issue of first impression.[1] The resolution of this threshold issue involves statutory construction, which is a legal issue, and our review is *de novo*. See, *e.g.*, *People v. Smith*, 342 Ill. App. 3d 289, 293 (2003) (interpretation of a statute is *de novo*). A deferential standard of review is inapplicable to this question of law. See, *e.g.*, *People v. Kohl*, 364 Ill. App. 3d 495, 499 (2006) ("legal findings–such as a trial court's interpretation of a statute–are entitled to no deference").

¶ 29    Section 16G-15(a)(1) of the Identity Theft Law provides:
    "A person commits the offense of identity theft when he or she *knowingly*:
        (1) uses any personal identifying information or personal identification document *of another person* to fraudulently obtain credit, money, goods, services, or other property[.]" (Emphases added.) 720 ILCS 5/16G-15(a)(1) (West 2008).
Section 16G-10 defines "[p]ersonal identifying information" and defendant does not dispute that it includes "[a] person's Social Security number." See 720 ILCS 5/16G-10(b)(5) (West 2008). Defendant also has not disputed whether the State proved the information was used to fraudulently obtain credit, money, goods, services, or other property. She argues only that the State was required to prove, and did not prove, that she *knowingly* used information *of another person*. The State argues "as the trial court suggested, it would frustrate the General Assembly's clear intent in promulgating the Identity Theft Law to allow a defendant to escape liability simply by claiming [she] made up [a social security number] that just happened to belong to someone else."

¶ 30    "The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent. [Citation.]" *People v. Comage*, 241 Ill. 2d 139, 144 (2011). "The most reliable indicator of legislative intent is the language of the statute, given its plain and

---

[1] We note that, in *People v. Jackson*, 391 Ill. App. 3d 11 (2009), this court considered the knowledge element of the Illinois identity theft statute, but did not squarely address the issue of whether the statutory language requires the State to prove that a defendant knew that the personal identifying information used *actually* belonged to another person.

ordinary meaning." *People v. Jackson*, 2011 IL 110615, ¶ 12. This court must view the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation. *Id.* Each word, clause, and sentence of the statute must be given a reasonable meaning, if possible, and should not be rendered superfluous. *Id.* In construing a statute, we may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another. *Id.* "[T]he purpose of the identity theft statute is to protect the economy and people of Illinois from the ill-effects of identity theft." *People v. Madrigal*, 241 Ill. 2d 463, 467 (2011).

¶ 31    The issue here is whether the Illinois identity theft statute's term "knowingly" applies to all the subsequently listed elements of the crime of identity theft including "of another person." We believe it does. Although interpreting a different statute, the Illinois Supreme Court concluded that " 'knowledge,' traditionally a form of general intent, [was] the requisite mental state applicable to the provision as a whole." *People v. Frieberg*, 147 Ill. 2d 326, 347 (1992). The *Frieberg* court was interpreting section 401.1(a) of the Illinois Controlled Substances Act (formerly Ill. Rev. Stat. 1987, ch. 56½, ¶ 1401.1(a)) and its description of "controlled substance trafficking." The relevant language stated: "any person who *knowingly* brings or causes to be brought into this State for the purpose of manufacture or delivery or with the intent to manufacture or deliver a controlled or counterfeit substance is guilty of controlled substance trafficking." (Emphasis added.) *Id.* The *Frieberg* court concluded that "knowledge" was the requisite mental state applicable to the provision as a whole and, thus, it is necessary to prove that an individual charged with violating section 401.1(a) have both knowledge of the "bringing" of the controlled substance as well as knowledge of the end or aim of that activity. *Id.*

¶ 32    The *Frieberg* court discussed the section of the Criminal Code of 1961 pertaining to mental state (now 720 ILCS 5/4-3 (West 2008)), section 4-3(b), which states: "[i]f the statute defining an offense prescribed a particular mental state with respect to the offense as a whole, without distinguishing among the elements thereof, the prescribed mental state applies to each such element." The *Frieberg* court noted that "regarding section 4-3(b), *** often a mental state word such as 'knowingly' is positioned in a statute so that, grammatically, it may apply to all the elements of an offense." *Frieberg*, 147 Ill. 2d at 347. In the instant case, the word "knowingly" in the Identity Theft Law immediately precedes a colon and is positioned before all of the elements of the offense. Thus, we believe that the word "knowingly" applies to all of the subsequently listed elements of the offense, including "of another person."

¶ 33    Defendant relies on *Flores-Figueroa v. United States*, 556 U.S. 646 (2009). In *Flores-Figueroa*, the United States Supreme Court construed a similar federal statute. "A federal court's construction of a federal statute is not binding on Illinois courts in construing a similar state statute." *People v. Gutman*, 2011 IL 110338, ¶ 17. Nonetheless, we believe that the *Flores-Figueroa* Court's reasoning regarding the "knowledge" requirement is applicable to the issue of the similar "knowledge" requirement in the Illinois identity theft statute. See *Gutman*, 2011 IL 110338, ¶ 17 (explaining that it would consider United States Supreme Court opinion "at length" because the plurality and the dissent contained "thorough and

reasoned arguments" regarding the definitions of the terms that were also at issue in the Illinois statute).

¶ 34    The federal aggravated identity theft statute provides, in relevant part:

"(a) Offenses.

(1) In general. Whoever, during and in relation to any felony violation enumerated in subsection (c), *knowingly* transfers, possesses, or uses, without lawful authority, a means of identification *of another person* shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years." (Emphases added.) 18 U.S.C. § 1028A(a)(1) (2006).

The issue before the *Flores-Figueroa* Court was whether the defendant could be convicted under the statute *regardless* of whether he actually knew the false information he used belonged to someone else. The facts in *Flores-Figueroa* showed that the defendant had obtained and used counterfeit identification documents for employment purposes for years that did not belong to any actual person. However, he received new documents with new numbers which turned out to actually belong to others. At Flores-Figueroa's trial, the government had argued that it was inconsequential whether he knew that his second set of documents was "a means of identification of another person." *Flores-Figueroa*, 556 U.S. at 648. Not only had the district court "accepted the Government's argument" but "[t]he Court of Appeals upheld the District Court's determination." *Id.* at 649. The Supreme Court disagreed and explained that the statute's "knowingly" requirement applied to each term of the provision. Thus, the *Flores-Figueroa* Court held that the statute required the government to show that the defendant knew that the means of identification at issue, in fact, belonged to another person. *Id.* at 657.

¶ 35    The State argues that one "critical" difference between the Illinois state statute and the federal statute is that the Illinois statute "is not a[n] enhancement statute and does not carry with it a mandatory prison sentence." This is a distinction without a difference in terms of statutory interpretation of identical language.

¶ 36    The State further notes that "Illinois has a corollary Aggravated Identity Theft statute, 720 ILCS 5/16G-20, which defendant was not charged under," and argues that "adding the more stringent *mens rea* requirement from the federal enhancement statute would be inconsistent with the Illinois statutory scheme." The State's analogy of Illinois's statutory "scheme" to the federal scheme is flawed. The Illinois aggravated identity theft statute provides, in relevant part:

"(a) A person commits the offense of aggravated identity theft when he or she commits the offense of identity theft as set forth in subsection (a) of Section 16G-15:

(1) against a person 60 years of age or older or a disabled person as defined in Section 16-1.3 of this Code; or

(2) in furtherance of the activities of an organized gang." 720 ILCS 5/16G-20 (West 2008).

Thus, any "enhancement" pertains to the victim's age or disability or to the defendant's gang involvement and has nothing to do with the knowledge requirement at issue here. The State's

references to the so-called "additional *scienter* requirement" and "the more stringent *mens rea* requirement" of the Illinois aggravated identity theft statute in support of its attempt to limit the knowledge requirement to the Illinois aggravated identity theft statute fails.

¶ 37    Additionally, contrary to the State's assertion, the Illinois aggravated identity theft statute is not a "corollary" to the federal enhancement statute. Instead, the Illinois Identity Theft Law at issue here is the "corollary" to the federal enhancement statute construed in *Flores-Figueroa* because both contain the knowledge requirement. Under the federal statutory scheme, the underlying predicate offense committed by defendant in *Flores-Figueroa* did *not* have the knowledge requirement, only the enhancement statute contained the knowledge requirement. Under Illinois's statutory scheme, however, it is the predicate offense, the one defendant here was charged under, that contains the knowledge requirement.

¶ 38    The State, in another attempt to distinguish *Flores-Figueroa*, also notes that "at least one state court has rejected a similar attempt to apply *Flores-Figueroa* to its identity law." We find inapposite the case cited by the State, *State v. Garcia*, 788 N.W.2d 1 (Iowa Ct. App. 2010). The *Garcia* court interpreted an Iowa statute that provided: "A person commits the offense of identity theft if the person fraudulently uses or attempts to fraudulently use identification information of another person, with the intent to obtain credit, property, services, or other benefit." Iowa Code Ann. § 715A.8 (West 2005). Unlike the federal statute and the Illinois statute, the Iowa statute did not contain the word "knowingly." The Iowa statute criminalized "fraudulent" use and did *not* require that a defendant know that the identification information he used actually belonged to a real person. See *State v. Madrigal*, 776 N.W.2d 301 (Iowa Ct. App. 2009) (table). There is no similar distinction between the Illinois statute and the federal statute; both contain the knowledge requirement.

¶ 39    Despite the differences noted by the State between the federal aggravated identity theft statute and the Illinois identity theft statute, and similar to the *Flores-Figueroa* Court's interpretation of the federal statute, we conclude that the adverb "knowingly" in the Illinois statute modifies the following verb "uses" and also modifies the subsequent phrase "of another person." Thus, the Illinois identity theft statute required the State to prove defendant knew the personal identifying information that she used was that "of another person."

¶ 40              C. Trial Court's Interpretation of Identity Theft Statute

¶ 41    In a bench trial, although the court is presumed to know the law and apply it properly, this presumption is rebutted when the record affirmatively shows otherwise. *People v. Mandic*, 325 Ill. App. 3d 544, 546-47 (2001); see also, *e.g.*, *People v. Robinson*, 368 Ill. App. 3d 963, 977 (2006) (concluding that presumption was rebutted and reversing and remanding for new trial where court in bench trial clearly indicated incorrect understanding of the law by stating that the prior DUIs were to be considered as elements of the DUI charge against defendant); *People v. Kluxdal*, 225 Ill. App. 3d 217, 224 (1991) (reversing and remanding for new trial where trial court's repeated reference to incorrect standard of "clear and convincing evidence" rebutted the presumption that trial court applied proper burden of proof in assessing insanity defense). In the instant case, as shown below, the record contains several statements the trial court made in explaining its views that rebut the presumption. It

is important to note that we are not holding that the able and experienced trial judge ruled contrary to established Illinois law but rather that we disagree with him as to his statutory interpretation on this issue of first impression. As we have noted, at the time of trial, the Illinois identity theft statute had not been interpreted by reviewing courts. In reaching its decision of first impression, the trial court agreed with the state that the *Flores-Figueroa* Court's analysis of the word "knowingly" in the federal statute was inapplicable to the Illinois identity theft statute. Thus, the trial court required only that the State prove that defendant used the social security number of another person *regardless* of whether defendant knew it belonged in fact to another person. Today, we reject this interpretation.

¶ 42                             i. *Motion for a Directed Finding*

¶ 43      At the close of the State's case, defendant moved for a directed finding. She argued, as she does here, that the State: (1) was required to prove *all* elements of the offense beyond a reasonable doubt; (2) had failed to prove that defendant knowingly used the identity of another person; and (3) had failed to present any evidence on this element. She contended that the actual evidence was that "she had made this number up" and that she "did not know this was another person's identity."

¶ 44      Defendant argued that the Supreme Court's interpretation of the federal statute in the *Flores-Figueroa* case should be applied to the interpretation of the Illinois identity theft statute. Defendant noted that the *Flores-Figueroa* Court "held that the natural–that the actual English language of the statute, which is almost identical to the Illinois statute, is that a person must knowingly use the identity of another person and knowingly means knowingly as to each and every element including knowing that it was another person's."

¶ 45      The State responded that the Illinois statute and the federal statute were not the same and that *Flores-Figueroa* was inapplicable. Specifically, the State argued:

"Your Honor, this case is being heard in Cook County, Illinois, not in federal court and it's dealing with an Illinois statute, not a federal statute. Almost exactly like is not exactly like. And on these facts *under our law* what you have is the fact that she engaged in the action that is charged. She knowingly used that social security number. She doesn't have to know who it belongs to. *She doesn't have to absolutely know for certain if it's another person's* but she has to knowingly use it because there is no–it does not absolve criminal liability for her to get lucky and have somebody else's social security number as opposed to a whole bunch of nines that wouldn't go back to anybody." (Emphases added.)

The State further contended that, based on the evidence that was introduced, defendant's motion should be denied. The State, however, consistent with its argument that a defendant "*doesn't have to absolutely know for certain if it's another person's*" did *not* contend that it had proved that defendant knowingly used the social security number "of another person." (Emphasis added.)

¶ 46      In denying defendant's motion for a directed finding, the trial court stated:

"*[I]f I was to take [defendant's] interpretation of the statute*, it would totally thwart any–any type of meaning at all with regard to the personal identity theft statute as–as it's

-11-

presently written. I'm not going to take your interpretation of that, that just because of the fact that at least the evidence that was presented in her statement to the police is that she made up the number that that should somehow relieve her of liability of this portion–this portion of the case." (Emphasis added.)

Thus, the record demonstrates that the trial court disagreed with defendant that the State was required to prove defendant knowingly used the social security number "of another person." This constitutes an affirmative showing in the record that rebuts the presumption that the trial court knew the law and applied it correctly. The trial court did not state that it *found* that defendant had the requisite knowledge. Instead, the trial court agreed with the State's argument that this was not a requirement and accepted the State's contention that a defendant "doesn't have to absolutely know for certain if [the information used is] another person's." The court concluded that the Illinois identity theft statute should be read differently from the *Figueroa-Flores* Court's interpretation of the federal statute, a conclusion with which we disagree.

¶ 47        For clarification purposes, we agree with the dissent that the statute only requires that a defendant know that the number belongs to another person and does not require "certain" knowledge, *i.e.*, that the defendant "know the person whose number she is using." *Infra* ¶ 105. Thus, in the instant case, the State was required to prove that defendant knew the number belonged to "another person," but the State was not required to prove that defendant knew the number belonged to "Maria Nodarse."

¶ 48                                    ii. *Close of Evidence*

¶ 49        The record contains additional statements that rebut the presumption that the trial court applied the law correctly. At the end of the case, before the trial court ruled, defendant renewed her motion. Again she asked the trial judge to "review [the *Flores-Figueroa*] case and argued "it is directly on point as to the interpretation of what the statute has to mean." She also disagreed with the State's interpretation of *Flores-Figueroa* and its distinction between "state law versus federal law." Instead, defendant argued, the issue "was concerning how you interpret the language of the statute." She further argued that "if you use the exact same approach, reasoning pattern as for the statute in *Flores-Figueroa*, you would come to the same result here."

¶ 50        Defendant acknowledged, and disagreed with, the trial court's prior reasoning that the interpretation urged by defendant may result in no one being found guilty. Defendant gave examples of circumstances where the State would be able to meet its burden such as "a stolen purse, going on-line, phishing type *** emails to get people to turn over their *** information." Defendant asserted, however, "I just don't think that the statute according to the interpretation of the Supreme Court would apply to people who just make up a number."

¶ 51        The trial court rejected defendant's arguments, stating:

"*I'm not prepared to interpret the statute in the same way that the Federal Court implies and interprets the federal statute on this point*. I don't believe given the reasoning of this case, the fact that says–the State indicates that she made up the social security–made up the social security number, in fact, it was–it was of another person, in

fact, did–was used to obtain subject property that is the subject of the case.

There will be a finding of guilty." (Emphasis added.)

Thus, as the record shows, the trial court disagreed with defendant's argument regarding the applicability of *Flores-Figueroa* and rejected the requisite element of knowledge. The trial court's unequivocal statement "I'm not prepared to interpret the statute in the same way that the Federal Court implies and interprets the federal statute *on this point*" (emphasis added) shows that the trial court concluded that the State was not required to prove beyond a reasonable doubt that defendant "knew" the social security number she used was that of another person.

¶ 52    With respect to the dissent's implication that defense counsel somehow "misunderstood" or even "incorrectly represented" the *Flores-Figueroa* decision to the trial court (*infra* ¶ 103), we are satisfied that the trial court understood the *Flores-Figueroa* holding and its import. The import of the decision was to clarify that the federal statute "requires the Government to *show that the defendant knew* that the means of identification at issue belonged to another person." (Emphasis added.) *Flores-Figueroa*, 556 U.S. at 657. As the record shows, the trial court here did not conclude that the *Flores-Figueroa* case was "distinguishable" and, if anything, concluded that it was sufficient that the social security number was used to obtain property and in fact belonged to another person, regardless of whether defendant here knew that the number belonged to another person. The trial court unequivocally stated that it was not prepared to interpret the Illinois "statute" the same way that the *Flores-Figueroa* Court interpreted the federal "statute." We believe the trial court was incorrect and, unlike the trial court, we *do* interpret the Illinois statute the same way that the *Flores-Figueroa* Court interpreted the federal statute. We recognize that, had the trial court stated that it found that defendant had the requisite knowledge required by the Illinois identity theft statute, our analysis would be different. We recognize that there is no requirement that a judge in a bench trial mention everything or even anything that contributed to his or her finding. *People v. Mandic*, 325 Ill. App. 3d at 546-47. But our analysis is not based on the trial court's silence nor the absence of an explicit finding; we base our conclusion on the affirmative matter showing that the trial court's interpretation of the statute differed from that which we pronounce today. Moreover, we believe that the reason the record contains no finding of defendant's knowledge that the number, in fact, belonged to another person is because the trial court concluded that this element of knowledge was not required and agreed with the State that it need not be proved.

¶ 53    In finding defendant guilty, the trial court accepted the State's interpretation of the statute, and applied it to the instant case. As we hold today, we find that the trial court's interpretation was incorrect.

¶ 54                              iii. *Posttrial Motion to Reconsider*

¶ 55    The hearing on defendant's posttrial motion supplies further evidence of the trial court's interpretation of the statute. During the hearing, defendant argued that the only evidence that linked defendant to the offense was "her admission that she had made up that social security

-13-

number and had bought a car, a Mitsubishi Eclipse, using that number." Defendant noted that when asked where she obtained the number "her response was that she made it up." She argued that "there was no evidence, zero, that was submitted that [she] had anything other than a made-up number."

¶ 56 Notably, however, the defendant devoted the majority of her argument to the first facet of her sufficiency argument described earlier, which is the threshold issue here, the proper interpretation of the statute. Defendant, for the third time, discussed the reasoning in the Supreme Court case of *Flores-Figueroa*, argued that its construction of the federal statute was applicable to the Illinois statute, and contended the trial court should construe the Illinois statute the same way. She argued that the relevant language of the two statutes, both of which she noted she had included in paragraph seven of her motion to reconsider, was almost identical. Defendant asserted that it did not matter whether a statute was a "federal or state" statute because the *Flores-Figueroa* case concerned "telling lower courts how you must read the statutes." Defendant asserted that the requirement of knowledge "applies to each and every one of the elements." Defendant then asserted that "the State failed to present any evidence that [she] knew that this document belonged to another person and presented evidence that she made up the number.

¶ 57 The trial court asked defendant: "What if the statement she gave to the police that it was a made-up number is viewed as a self-serving statement and not to be believed whether it was somebody's number?" Defendant argued that, even if there was no statement, "there was zero evidence presented in any other manner to meet their burden beyond a reasonable doubt that she knew this document was another person's."

¶ 58 The State disagreed. Again the State contended that "the reasoning [of the *Flores-Figueroa* case did] not have to be followed." The State asserted that the word "knowingly" in the statute applied solely to "uses" of the information and "[t]hat is the *mens rea*, using that information or that record." The State then contended that "It does not follow from natural grammar that it would apply to the object of those verbs, the possessive object of another person."

¶ 59 The State additionally argued that, even if the statute were to be construed as defendant contended, "there was in fact sufficient evidence shown to show that she knew that these items belonged to another person." The State conceded that the evidence included "the statement where she claims that it was a made-up number." The State noted, however, that the evidence also included the fact that the actual owner of the number was also named Maria, and that defendant used this number *even though* she had another number which showed that defendant "knew that somehow these numbers were good enough to use to obtain credit." Thus, the State contended there was "a proper inference to be made as to her knowledge and her *mens rea* that it was a valid Social Security number that could be used successfully."

¶ 60 Defendant responded that "the [Illinois] statute is almost perfectly in line with the Federal statute that [the *Flores-Figueroa* Court] interpreted, and, most importantly, the reasoning behind how they interpreted it is exactly the same." Defendant asked the trial court to "make a finding and follow the Supreme Court's decision [in *Flores-Figueroa*]."

¶ 61    Having been asked–a third time–by defendant to make a finding that the Illinois statute, like the federal statute, required the "knowledge" requirement, the trial court declined to do so. The trial court ruled as follows:

> "*If it applied to this case, I would follow it. I don't believe it does based upon my ruling at trial*.
>
> Also, looking at the statute, the Indictment as it is phrased, it is not only knowingly using personal identification information, *whether it is made up or not*, but that there was an intent to defraud by using that and by that means to obtain either goods or services, which was shown in this case. The motion to reconsider the finding of the court is denied." (Emphases added.)

The court rejected defendant's argument that the Illinois identity theft statute required knowledge that the social security number belonged to an "actual person" as it did in its "ruling at trial." The court clearly agreed with the State that, so long as it proved defendant "used" personal identification information and proved "intent to defraud by using that," it had proved its case, *regardless* of "whether it is made up or not." The court apparently agreed with the State that a defendant charged with identity theft who uses a social security number "*doesn't have to absolutely know for certain if it's another person's.*" (Emphasis added.) Therefore, once again, the record contains affirmative matter that rebuts the presumption that the trial court applied the law correctly.

¶ 62    As to the remainder of the court's statement regarding the "Indictment as it is phrased," we note that the indictment is not phrased correctly. The indictment "as it is phrased" fails to include the statutory language "of another person," which is the very element at issue here. No argument has been raised on appeal regarding the sufficiency of the charging instrument or that it failed to adequately apprise defendant of the charge. Although the indictment charges "Financial Identity Theft" and includes the statutory citation, we believe that the failure to include the statutory words "of another person" reflects the trial court's conclusion, as well as the State's position on appeal, that the crime of identity theft does not require this element of knowledge. The State was not merely required to prove the "Indictment as it is phrased." The State was required to prove that defendant was guilty beyond a reasonable doubt of identity theft, which, as we have now held, includes knowledge that the information used actually belongs to "another person." The State, however, clearly argued below that, in the first instance, it was not required to prove, and the evidence need not show, the knowledge element, as that requirement was interpreted by the *Flores-Figueroa* Court, and maintains its argument on appeal. Although we reject the State's argument that it was sufficient for them to show that the number "in fact" was that of another person, *regardless* of defendant's knowledge, the trial court accepted the State's argument. This was not a correct interpretation of Illinois law.

¶ 63                                    D. Remedy

¶ 64    Having determined the trial court, as trier of fact, applied the wrong standard regarding the element of knowledge contained in the Illinois identity theft statute, we must now decide upon the appropriate remedy. Constitutional due process rights require that a person may not

be convicted in state court unless the State meets its burden of proving all of the elements of the offense beyond a reasonable doubt. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007); *People v. Howery*, 178 Ill. 2d 1, 32 (1997).

¶ 65    Again, we find the case of *Wilson v. United States* instructive. The *Wilson* court asked, "What effect should the trial court's failure to apply the proper standard of the subjective element under [the statute] have upon the disposition of this appeal?" *Wilson*, 250 F.2d at 323-24. As the *Wilson* court noted:

   "There is surprisingly little authority respecting the question of the effect upon a conviction of a trial court's misconception regarding an essential element of the offense in a non-jury case. Indeed, we find no direct authority. However, analogous decisions involving jury cases and several basic principles of criminal law furnish clear guideposts to a resolution of this issue." *Id.* at 324.

Over 50 years later, this still appears to be the case. Our research has not disclosed an Illinois case with the same procedural posture as the instant case. Nonetheless, we agree that the situation with which we are presented is analogous to the situation where a jury is given erroneous instructions on an essential element of an offense. As the *Wilson* court stated: "Is there any difference between a trial judge formally instructing the jury as to what he thinks the applicable law to be and in effect instructing himself similarly in a non-jury case?" *Id.* at 324. Apart from these procedural similarities, however, we must part company with the subsequent analysis of the *Wilson* court.

¶ 66    The *Wilson* court believed that it was not "dealing with a mere error of law occurring during the course of trial and which can be disregarded as harmless." *Id.* The court also decided that if the case before it "had been tried to a jury and the comments voiced by the learned trial judge had taken the form of jury instructions, a conviction obtained thereunder could not stand under the principles enunciated in the [United States Supreme Court cases requiring the mental element misapprehended by the trial court]." *Id.* Thus, the court ultimately concluded that "the application of improper standards of law to the facts by the trier of fact" compelled reversal of the conviction. *Id.* at 324-25 (explaining that "it is no answer to the application of an erroneous standard of law that the evidence is sufficient to support a verdict reached in accordance with the proper standard of law").

¶ 67    The law has changed since 1958. Our disposition here is now informed by the United States Supreme Court case of *Neder v. United States*, 527 U.S. 1 (1999) (cited with approval by *People v. Washington*, 2012 IL 110283, ¶ 59, and *People v. Davis*, 233 Ill. 2d 244, 270-73 (2009)). The *Neder* Court concluded that "the omission of an element is an error that is subject to harmless-error analysis." *Neder*, 527 U.S. at 15. The *Neder* Court noted the harmless-error inquiry was, "Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?" *Id.* This inquiry is different than that regarding sufficiency of the evidence. See *People v. Dennis*, 181 Ill. 2d 87, 95 (1998). As the *Dennis* court explained:

   "Instructional errors are reviewed under a harmless error, not a reasonable doubt, analysis. When confronted with a sufficiency of the evidence claim, the reviewing court determines whether, viewing the evidence in the light most favorable to the State, any

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citation.] Contrarily, the test for harmless error in the context of an instructional error is whether the result at trial would have been different had the jury been properly instructed. [Citation.] Where the evidence of guilt is clear and convincing, an instructional error may be deemed harmless." *Id.*

¶ 68    In *Neder*, the defendant was convicted of federal mail fraud, wire fraud, bank fraud, and filing false federal income tax returns. The trial court in *Neder* did not submit the element of materiality with regard to the tax and bank fraud charges but, instead, determined, it was a question for the judge, not the jury. The trial judge found that the evidence established the materiality element. The Supreme Court explained that it was error for the trial judge to decide the issue, rather than presenting it to the jury but concluded that the error was harmless. *Neder*, 527 U.S. at 6-7.

¶ 69    *Neder* is distinguishable from the instant case. In concluding the error was harmless, the *Neder* Court explained that it was "beyond a reasonable doubt that the omitted element was *uncontested* and *supported by overwhelming evidence*, such that the jury verdict would have been the same absent the error." (Emphases added.) *Id.* at 17. More importantly, the defendant in *Neder* did not contest the issue of materiality. *Id.* at 15.

¶ 70    In the instant case, the State introduced evidence at trial that, according to defendant, she made up the number. Defendant introduced evidence from Maria Nodarse that she had never met defendant and did not know anyone by the name of Maria Hernandez. There was no direct evidence that defendant knew that the number, in fact, belonged to another person. On the other hand, the State argues that the circumstantial evidence, and the reasonable inferences drawn therefrom, "was more than sufficient to show that defendant knew that the number belonged to some person." The State notes the trial court questioned defense counsel: "What if the statement she gave to the police that it was a made-up number is viewed as a self-serving statement and not to be believed whether it was somebody's number?" The State also notes that "defendant fraudulently furnished the car salesmen with two [social security numbers] to ensure that she hit a 'good number'–*i.e.*, a number belonging to someone who had good enough credit to enable her [to] buy the Mitsubishi that day." The State additionally notes that although there are "1,000,000,000 (one billion) possible combinations of nine-digit numbers, [d]efendant nonetheless claims that she pulled Maria Nodarse's peculiar nine-digit number out of the ether." The State further argues that "the notion that defendant just happened to make up the peculiar number of a woman (and not a man) in the greater Chicago area, who was not only alive, but old enough to have good credit, defies common sense and reasonable belief."

¶ 71    Thus, unlike in *Neder*, the omitted element was contested and we cannot say that defendant's knowledge that the social security number she used belonged in fact to another person was supported by overwhelming evidence. It is not clear beyond a reasonable doubt that the trier of fact "would have found the defendant guilty absent the error." *Neder*, 527 U.S. at 18. Despite the circumstantial evidence of defendant's knowledge, we conclude that the evidence proving defendant's guilt was not so clear and convincing that the error was harmless beyond a reasonable doubt. *Dennis*, 181 Ill. 2d at 95; see also *People v. Mohr*, 228 Ill. 2d 53, 69 (2008) (acknowledging circumstantial evidence of the defendant's guilt but

concluding that the court could not say "that this evidence was so overwhelming as to make the jury instruction error harmless beyond a reasonable doubt").

¶ 72    In *People v. Mohr*, 228 Ill. 2d 53 (2008), the jury was unnecessarily and erroneously instructed on provocation, even though defendant was charged only with second degree murder and also denied committing the offense. The *Mohr* court held that the trial court abused its discretion in giving the instruction, in the absence of any evidence of provocation. *Id.* at 68. The court explained that the instruction, coupled with the State's concession, may have helped to create an inference that provocation had occurred. The court noted that "[t]o permit the State to concede provocation, and then instruct the jury that second degree murder involves serious provocation in a case where the defendant denies that he committed the offense, posed a legitimate risk that the jury might surmise there was unpresented evidence which showed the defendant had an altercation with [the victim]." *Id.* Thus, as the court further noted, "[t]he jury could have concluded that because the State admitted provocation occurred–and reduced first degree murder to second degree murder–the defendant's denials were false, and there was a motive for the killing." *Id.*

¶ 73    Nonetheless, in *Mohr*, the State contended that any error in giving the instruction was harmless because there was " 'clear and convincing' " and " 'overwhelming' " evidence against the defendant. *Id.* at 69. The *Mohr* court acknowledged the circumstantial evidence of the defendant's guilt. This circumstantial evidence included the following: (1) the defendant was in the victim's house when she was killed; (2) the defendant stated that he did not remove his shoes and socks inside the victim's house, but his toe print was found on the bathroom floor near the bedroom where the victim's body was found; (3) the defendant did not report his discovery of the body; and (4) the defendant gave inconsistent statements to his friend about his activities on the night that the victim was killed. *Id.* The court did not find this evidence so overwhelming as to make the jury instruction error harmless beyond a reasonable doubt and remanded the matter for a new trial. *Id.*

¶ 74    Here, we believe that the circumstantial evidence of defendant's "knowledge" outlined by the State is less than overwhelming. We must, therefore, vacate defendant's conviction and remand the case for a new trial. In view of our decision to remand this matter for a new trial, we must avoid subjecting defendant to double jeopardy. Thus, we next address defendant's second argument as to why she is entitled to a reversal of her conviction.

¶ 75                    II. Whether the State Proved That Defendant Was the Same
                    Person Who Signed the Credit Application Containing Another
                                Person's Social Security Number

¶ 76    Defendant also argues that "[t]he State failed to prove beyond a reasonable doubt that the defendant was the same person who on September 2, 2006 signed the credit application containing [Maria Nodarse's social security number] where no one identified her as doing so." She acknowledges that salesperson Ray Santiago of Sierra Motors Group testified that an individual named "Maria Hernandez" purchased a 2001 Mitsubishi on September 2, 2006, but argues that Santiago did not identify defendant as the person who signed that name. She also concedes that she admitted to the detectives that she purchased a Mitsubishi vehicle

-18-

from Sierra Motors Group using Maria Nodarse's social security number to obtain credit for the purchase, but asserts "there was no testimony as to what was meant by the word 'used' or when this undefined use took place." She further asserts that there was no testimony from the detectives as to her stating the date of the purchase or the model of the Mitsubishi. She also notes that the State presented no "witness who could identify defendant as the September 2, 2006 applicant, nor did [the State] present testimony that the defendant admitted to signing the September 2, 2006 application."

¶ 77 The State argues that "the unimpeached evidence–together with the reasonable inferences generated by the evidence–provided more [than] ample proof that defendant signed the credit application *** as well as the sales contract ***, in which she used the victim's [social security number] to obtain credit and then consummate the purchase of a Mitsubishi Eclipse from Sierra [Auto Group]." We agree.

¶ 78 As noted earlier, our standard of review when evaluating a challenge to the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis added.) *Montoya*, 373 Ill. App. 3d at 80. In the instant case, the evidence established that defendant "Maria Hernandez" was the same "Maria Hernandez" who signed the credit application for Turner Acceptance Corporation and the sales contract, both of which contained Maria Nodarse's social security number.

¶ 79 As noted, salesperson Ray Santiago of Sierra Motors Group testified that an individual named "Maria Hernandez" purchased a 200l Mitsubishi on September 2, 2006. He was the individual who verified the documents, introduced into evidence, that were signed by "Maria Hernandez." Even though Santiago did not make an in-court identification of defendant, his testimony, combined with the additional evidence adduced at trial, was sufficient to prove that defendant "Maria Hernandez" was the "Maria Hernandez" who signed these documents.

¶ 80 Detective Robert Ross testified that he investigated Maria Nodarse's identity theft case. His investigation linked defendant to the "Maria Hernandez" who purchased the vehicle using Nodarse's social security number. In sum, Detective Ross testified as follows: (1) he received documentation from Turner Acceptance Corporation; (2) based on that information, he determined a possible place of employment and contacted the Marriott Hotel; (3) he next determined the name of a possible suspect, Maria Hernandez; (4) he contacted this Maria Hernandez's brother and left a message that he wanted to speak to her; (5) defendant, Maria Hernandez, whom Detective Ross identified in court, met him at Area 3 headquarters; (6) defendant spoke primarily Spanish; (7) he and Detective Jude Martinez, who assisted with translation, questioned defendant to determine if she had purchased a vehicle from Sierra Auto Group and to determine if she gave Maria Nodarse's social security number; (8) Detective Martinez translated defendant's responses into English; and (9) defendant was placed under arrest at the conclusion of the interview. Detective Jude Martinez testified regarding the statements defendant made which included her admission that she used Maria Nodarse's social security number on a credit application to purchase a Mitsubishi vehicle from Sierra Auto Group.

¶ 81 A rational trier of fact could conclude that defendant "Maria Hernandez" was the same

"Maria Hernandez" that signed the credit application and purchased the Mitsubishi vehicle in 2006, based upon the unimpeached testimony of the three witnesses, Ray Santiago, Detective Ross, and Detective Martinez, along with the three documents entered into evidence consisting of two pages of the signed credit application and the signed sales contract. Therefore, we conclude that the State proved beyond a reasonable doubt that defendant was the same person who signed the credit application containing Nodarse's social security number.

¶ 82                                     CONCLUSION

¶ 83       As a matter of first impression, we hold that the Illinois Identity Theft Law (720 ILCS 5/16G-15(a) (West 2008)) requires the State to prove that a defendant knew that the personal identifying information he or she used to fraudulently obtain credit, money, goods, services, or other property of value did, in fact, belong to "another person." Where that essential element of the offense was not considered in the instant case, a harmless-error analysis applies. We conclude that the trial court's error here was not harmless where the evidence of defendant's knowledge was contradicted and not overwhelming. We further conclude that the evidence was sufficient to prove that defendant was the same person who signed the credit application containing Nodarse's social security number. We vacate the judgment of the circuit court of Cook County and remand this cause for a new trial.

¶ 84       Vacated and remanded.

¶ 85       Justice Howse concurred in the judgment and opinion.

¶ 86       JUSTICE McBRIDE, concurring in part and dissenting in part:

¶ 87       I agree that we must address whether the identity theft statute requires proof that defendant knew the social security number she used was that of another person. That issue has not been forfeited, it is properly before us, and it is part and parcel of the review of the sufficiency of the evidence.

¶ 88       I disagree, however, with any suggestion by the majority that the trial court misunderstood the law or that the issue of the trial judge's misapplication of the knowledge requirement is presently before us. Defendant has not raised this issue on appeal; instead, the majority has taken it upon itself to raise this issue by stating defendant's argument has "two facets."

¶ 89       Briefs generally specify the precise points relied upon for reversal (*People v. Patrick*, 2011 IL 111666, ¶ 26), and any fair reading of the defendant's brief and a review of the two issues listed there demonstrate that the only issues on appeal concern the sufficiency of the evidence. The defendant's claims are devoted solely to the State's failure to prove identity theft.

¶ 90       The defendant's brief on pages 15 and 16 sums up her main arguments on appeal: knowledge is required and the State's proof was insufficient. She argues "had the legislature

-20-

intended to exclude knowledge of the identifying information being that of another person from the statute, it could have easily done so." "[I]n the instant case where the defendant made up the number, one would not know she was using an actual person's Social Security number." "In the instant case, no evidence was presented that defendant had knowledge that the social security number used in the transaction had been assigned to another person. Nodarse had never met nor could identify the defendant. There was no testimony *** that Nodarse had ever been a victim of a purse snatching, [or] an internet identity scam ***." "Nor was there evidence that any other identifying information of Ms. Nodarse was used. No evidence was submitted *** [that] defendant *** possessed an actual Social Security card bearing the number 'xxx-xx-xxxx.' " "In fact, the only evidence presented, which was uncontested, was that the defendant made up the number. Simply put, the State is unable to point to any evidence that the defendant knew the Social Security number was that of another individual. Thus, no rational trier of fact could have concluded that the defendant knowingly used another's identifying information."

¶ 91    On page 17 of defendant's brief she continues: "Here the defendant possessed no actual identification card. Here there was no evidence that the defendant paid anyone for the Social Security number." She then requests that "[t]his court hold that the State is required to prove that the defendant knew she was using the identity of another person" and "find the defendant not guilty."

¶ 92    A review of the first 17 pages of the State's brief also supports the view that the only issue before us is the sufficiency of the evidence. In those pages, the State documents how the evidence at trial demonstrates that defendant knew she used another person's social security number to purchase a car from Sierra Auto Group. Although there is some discussion in the latter part of the State's brief concerning the *Flores-Figueroa* case and the knowledge requirement, there is no discussion concerning the trial court's misunderstanding of the law because it has not been raised by defendant on appeal.

¶ 93    Although defendant has clearly raised the specific requirement of knowledge as an element of the offense, she has raised it in the context of the evidence presented and the State's failure to prove that knowledge. The requirement of knowledge as an element of the offense of identity theft and a trial judge's misunderstanding of the law are not the same issues, and this latter claim is not properly before us.

¶ 94    The supreme court in *People v. Givens*, 237 Ill. 2d 311 (2010), recently admonished reviewing courts against raising unbriefed issues on appeal.

"Illinois law is well settled that other than for assessing subject matter jurisdiction, 'a reviewing court should not normally search the record for unargued and unbriefed reasons to *reverse* a trial court judgment.' (Emphasis added.) *Saldana v. Wirtz Cartage Co.*, 74 Ill. 2d 379, 386 (1978); see also *Parks v. McWhorter*, 106 Ill. 2d 181, 184 (1985) (noting that except for jurisdictional grounds, a search of the record for unargued and unbriefed reasons to reverse a lower court's decision is improper); *People ex rel. Akin v. Southern Gem Co.*, 332 Ill. 370, 372 (1928) ('while this court will examine the record for the purpose of affirming a judgment it will not do so for the purpose of reversing it'). Moreover, in *Greenlaw v. United States*, 554 U.S. 237, 243, 171 L. Ed. 2d 399, 408, 128

S. Ct. 2559, 2564 (2008), the United States Supreme Court recently addressed the propriety of a reviewing court ruling upon issues raised *sua sponte*. The Court admonished:

> 'In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present. To the extent courts have approved departures from the party presentation principle in criminal cases, the justification has usually been to protect a *pro se* litigant's rights. [Citation.] But as a general rule, "[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." [Citation.] As cogently explained:

> > "[Courts] do not, or should not, sally forth each day looking for wrongs to right. We wait for cases to come to us, and when they do we normally decide only questions presented by the parties. Counsel almost always know a great deal more about their cases than we do ***." [Citation.]' *Greenlaw*, 554 U.S. at 243-44, 171 L. Ed. 2d at 408, 128 S. Ct. at 2564.

Our appellate court in *People v. Rodriguez*, 336 Ill. App. 3d 1, 14 (2002), expressed a similar sentiment as follows:

> 'While a reviewing court has the power to raise unbriefed issues pursuant to Supreme Court Rule 366(a)(5), we must refrain from doing so when it would have the effect of transforming this court's role from that of jurist to advocate. [Citation.] Were we to address these unbriefed issues, we would be forced to speculate as to the arguments that the parties might have presented had these issues been properly raised before this court. To engage in such speculation would only cause further injustice; thus we refrain from addressing these issues *sua sponte*.' " *Givens*, 237 Ill. 2d at 323-24.

¶ 95    Appellate counsel, who was also trial counsel, did not argue or brief the issue that the trial judge misunderstood or misapplied the law. Appellate counsel only argued that the statute requires proof of knowledge and the State never established this proof. Defendant's brief does not cite or refer to a single case recognizing the general principle that a trial judge is presumed to know the law and only when the record affirmatively shows otherwise will relief be warranted. The reason those cases are completely absent from defendant's brief is because she never raised this claim on appeal. The majority, however, has *sua sponte* raised this issue and by doing so has violated the well-established principles pointed out in *Givens* above.

¶ 96    Moreover, although a reviewing court does not lack authority to address unbriefed issues and may do so when a clear and obvious error exists in the trial court, this is not such a case. *Givens*, 237 Ill. 2d at 325.

¶ 97    In addition, to preserve a claim of error for review, an error must not only be objected to at trial, but it must be specifically included in the motion for a new trial. *People v. McLaurin*, 235 Ill. 2d 478, 485 (2009). This claimed error was not listed as a basis for a new trial.

-22-

Defendant's motion, which was titled a "Motion to Reconsider Verdict," does not claim the trial court misunderstood or misapplied the law concerning the knowledge requirement. Instead, it states that the trial court erred in denying defendant's motion for a directed finding at the close of the State's case. This general statement concerning the denial of the motion is not sufficient to preserve the error for our review.

¶ 98 Supreme Court Rule 341(h)(7) also precludes our consideration of the issue because it has not been properly briefed and argued. Ill. S. Ct. R. 341(h)(7) (eff. Sept. 1, 2006). In one line of defendant's brief, she states: "At issue is whether the trial court erred in rejecting the defendant's argument that 720 ILCS 5/16G-15(a)(1) requires the State to prove that the defendant knew the social security number actually belonged to another individual." This one line in the brief is not sufficient to preserve this claim of error. *People v. Nieves*, 192 Ill. 2d 487, 503 (2000). There is no reasoned argument presented with reference to relevant authority, as required by Supreme Court Rule 341. There is not a case cited to suggest that the trial court misapplied the law. Defendant does not argue that the trial judge misunderstood the law. Defendant has not referenced any pages in the record to support this claim. Since defendant has not complied with Supreme Court Rule 341, this issue is forfeited. *Nieves*, 192 Ill. 2d at 503; see also *People v. Ward*, 215 Ill. 2d 317, 332 (2005) ("A point raised in a brief but not supported by citation to relevant authority fails to satisfy the requirements of Supreme Court Rule 341(e)(7) [citation] and is therefore forfeited."). In my opinion, this one line, upon which the majority bases its decision, is simply a summary of defendant's claim that the State's proof was insufficient to establish knowledge.

¶ 99 Most troubling about the majority's decision to *sua sponte* consider an issue not raised by the defendant is the State's inability to challenge the result since it has not had an opportunity to respond.

¶ 100 The two most important tasks a reviewing court has are to ascertain its own jurisdiction and to determine which issue or issues have been forfeited. *People v. Smith*, 228 Ill. 2d 95, 106 (2008). Instead of reviewing the defendant's brief and its contents to determine whether the issue has been forfeited, the majority has transformed a sufficiency of the evidence argument into a claim that the trial judge did not follow or understand the law.

¶ 101 Although I believe the issue is not properly before us, I also disagree with any suggestion that the trial judge misapplied the law, or that he dispensed with the State's burden to prove knowledge. What the trial court did in this case was reject defendant's claim that the State failed in its burden of proof because there was no direct proof that defendant knew the social security number she used belonged to another. Defense counsel repeatedly argued there was no evidence at all of defendant's knowledge. He also contended that her statement to police that she made up the social security number could not establish that defendant knowingly used the social security number of another. Defendant's position at trial and on appeal is essentially based upon the same flawed notion that this statement must be accepted as true. The trial court's attention was directed to these particular contentions multiple times, but the trial court rejected this defense.

¶ 102 In a bench trial, the trial court is presumed to know the law and this presumption may only be rebutted when the record affirmatively shows otherwise. *People v. Mandic*, 325 Ill.

App. 3d 544, 546 (2001). In such an instance, the burden is on the defendant to demonstrate that an error occurred and to show that the trial judge misapplied the law. *People v. Roberson*, 83 Ill. App. 3d 45 (1980). As already pointed out above, defendant has not raised or argued these principles on appeal, nor has she demonstrated how the record rebuts this presumption. The majority has done that for her.

¶ 103    The mere fact that *Flores-Figueroa* was discussed by the defense attorney, the prosecutor, and the trial court does not demonstrate that the trial court misunderstood or misapplied the law. The many discussions about the case do, however, demonstrate that defense counsel misunderstood *Flores-Figueroa* and that defendant's attorney incorrectly represented that decision to the trial court on three separate occasions.

¶ 104    First, at the motion for a directed finding, defense counsel misconstrued the facts of the case and later as detailed below suggested that the Supreme Court considered the sufficiency of the evidence. Defense counsel made the following comments:

"There was no evidence whatsoever [Figueroa] knew that the number on that document was actually that of another person. He just made it up when he bought this false documentation or the person that sold him [those documents] had made it up he believed."

¶ 105    The prosecutor countered that defendant did not have to "know who it belongs to." The prosecutor also argued defendant does not have to absolutely know for certain if it is another person's. Neither of the prosecutor's statements conflicts with the statute at issue because "certain" knowledge is not required, nor is there a requirement that the defendant know the person whose number she is using, just that she knows it is another's social security number.

¶ 106    The State also argued that based upon the evidence presented up to that point, it had met its burden of proof. Thereafter, the trial court did not reject *Flores-Figueroa*, it simply said:

"[W]ith regard to the personal identity theft statute as–as it's presently written. I'm not going to take *your* interpretation of that, that just because of the fact that at least the evidence that was presented in her statement to the police is that she made up the number that that should somehow relieve her of liability of this portion–this portion of the case. So your motion in that regard is denied." (Emphasis added.)

¶ 107    During this colloquy, the trial judge did not discuss *Flores-Figueroa*, he never suggested that knowledge of the use of another's identifying information was not required or even words to that effect. He simply rejected defense counsel's claim that the evidence presented by the State, including defendant's statement, warranted a directed finding.

¶ 108    Immediately following that brief commentary, the defense rested without presenting evidence. Defense counsel for the second time referred to the *Flores-Figueroa* case at the close of all the evidence. He spoke briefly to the facts and then said:

"The Supreme Court said there was absolutely no proof that [Figueroa] was aware, he had knowledge that it was another person's. *** [T]he language of the two statutes is identical, near identical, and the interpretation from the Supreme Court *** backs up my argument."

Moments later defense counsel asked the court to review *Flores-Figueroa* and said he had

a copy. Counsel then said:

"And I believe that if you use the exact same approach, *** you would come to the same result here. I don't think that the [Illinois] statute according *to the interpretation of the Supreme Court would apply to people who just make up a number*." (Emphasis added.)

¶ 109    In direct response to defense counsel's argument, the trial judge said:

"I'm not prepared to interpret the statute in the same way that the Federal Court implies and interprets the federal statute on this point. I don't believe given the reasoning of this case, the fact that says–the State indicates that she made up the social security–made up the social security number, in fact, it was–it was of another person, in fact, did–was used to obtain subject property that is the subject of the case. There will be a finding of guilty."

At this point in the proceedings, it is unclear whether the trial judge's remarks were based upon an actual review of the *Flores-Figueroa* decision or merely defense counsel's representation of the case that when a defendant makes up a social security number that defendant cannot be found guilty of identity theft. In any event, it was clear that the trial judge disagreed with what counsel was representing or implying and the trial judge found the evidence was sufficient to convict.

¶ 110    At the motion for a new trial or to "reconsider the verdict," defense counsel inaccurately described the *Flores-Figueroa* case for the third time when defense counsel specifically argued:

"I cite the *Figueroa Flores* case because the facts in that case are very similar, and the Court's reasoning on how they interpreted the statute fits perfectly in this case. In that particular case, a gentleman had a false Social Security card. He had a physical card with the false number on it, and he had a resident alien card. It had [*sic*] his own name on those cards. *The Supreme Court found that the State was unable to show that the Government had proven that he knew those numbers that he had been using belonged to another person ***.*" (Emphasis added.)

¶ 111    At this same hearing, the State took the position that the federal statute and the *Flores-Figueroa* decision were not directly on point. However, the State also took the position that it had presented sufficient evidence to establish that defendant knew that the social security number she used to buy a car was another's. After this discussion and after the court indicated that it did not have to accept as true defendant's "self-serving" statement that she simply made up the social security number she used to buy the car, the trial judge denied the motion for a new trial.

¶ 112    Contrary to defense counsel's arguments outlined above, *Flores-Figueroa* was not about what type of evidence or proof is required to show knowledge, but whether knowledge of another was an element of the federal statute.

¶ 113    In *Flores-Figueroa*, a finding of guilty had been entered by the trial court and affirmed by the federal appeals courts. Both the trial and appeals courts specifically held that knowledge of another was not required under the federal statute. Because there was a split in the federal appeals courts on this precise issue, the Supreme Court took the case. Resolving only that conflict, the Supreme Court held that knowledge was required under the

federal statute. The Supreme Court never considered whether the evidence was sufficient to convict. Defense counsel, however, argued that under the *Flores-Figueroa* decision, defendant could not be found guilty of identity theft because the United States Supreme Court had already decided that if a defendant states she made up the social security number, the prosecution could not establish the requisite knowledge. This, of course, was not the holding in *Flores-Figueroa*. The *Flores-Figueroa* Court never discussed the sufficiency of the evidence; it only held that knowledge of another's social security number was a required element under the federal statute. The Court's opinion does not suggest that claiming to make up a social security number can relieve a defendant of criminal responsibility. Again, that particular question, whether a defendant's alleged statement that she made up a social security number could relieve a defendant of criminal responsibility, was not before the United States Supreme Court. This inaccurate representation of the case is what the trial court rejected. Although the trial judge's remarks indicate that *Flores-Figueroa* did not apply, it was not based upon the trial court's lack of understanding of the law, but based upon the defendant's erroneous claim that if a defendant says she made up the social security number, that defendant could not be found guilty of identity theft.

¶ 114     At the motion to reconsider, the court also said that not only is "knowledge" required (whether defendant claims the number was made up or not), the court pointed out that there was the additional requirement of fraudulently using that identification to obtain goods or property. I believe the record shows that the trial judge understood and correctly applied the law and the State was required to establish defendant's knowledge that when she used Mary Nodarse's social security number, defendant knew it belonged to another person.

¶ 115     Citing a recent Illinois Supreme Court decision, *People v. Gutman*, 2011 IL 110338, the majority acknowledges that " '[a] federal court's construction of a federal statute is not binding on Illinois courts in construing a similar state statute.' " *Supra* ¶ 33 (quoting *Gutman*, 2011 IL 110338, ¶ 17). Like other principles of law, the trial court is also presumed to know this principle. In light of the above, it seems inconsistent to fault the trial judge for not following defendant's interpretation of *Flores-Figueroa* when the trial judge was not bound to follow the Supreme Court's interpretation of the federal statute when construing the Illinois statute.

¶ 116     The majority has also ignored defense counsel's inaccurate portrayal of both the facts and the holding of the *Flores-Figueroa* decision. Instead, the majority has taken portions of the trial judge's remarks to conclude that he did not understand what is a very basic principle of Illinois criminal law, the elements of an offense. There are two essential elements in all criminal offenses–(1) a voluntary act (720 ILCS 5/4-1 (West 2006)); and (2) a mental state (720 ILCS 5/4-3(a) (West 2006)). *People v. Gray*, 36 Ill. App. 3d 720, 723 (1976); *People v. Taylor*, 68 Ill. App. 3d 680, 684 (1979).

¶ 117     Knowledge is one of those mental states. 720 ILCS 5/4-5 (West 2006). Knowledge generally refers to an awareness of the existence of facts which makes an individual's conduct unlawful. *People v. Weiss*, 263 Ill. App. 3d 725, 731 (1994).

¶ 118     Because of its very nature, knowledge is ordinarily proven by circumstantial evidence rather than direct proof. Accordingly, "[k]nowledge may be inferred from the facts and

circumstances of the case." *People v. Holt*, 271 Ill. App. 3d 1016, 1025 (1995). The identity theft statute incorporates this well established principle where it provides: "Knowledge shall be determined by an evaluation of all circumstances surrounding the use of the other person's identifying information or document." 720 ILCS 5/16G-15(b) (West 2006).

¶ 119    Although there are only a handful of reported decisions concerning the Illinois identity theft statute, trial courts have confronted similar issues before. Under various sections of the Criminal Code of 1961, a defendant's knowledge of a particular element must be proven in order to establish defendant's guilt for a particular criminal offense. For example, one of the elements of the offense of aggravated battery of a peace officer is that the defendant knows the individual harmed is a peace officer. 720 ILCS 5/12-4(b)(6) (West 2006); *In re Joel L.*, 345 Ill. App. 3d 830, 833 (2004). See also *People v. Barry*, 6 Ill. App. 3d 836 (1972); *People v. Brown*, 1 Ill. App. 3d 571 (1971). Similarly, under the offense of aggravated discharge of a firearm, it is a violation of the statute for a person to knowingly or intentionally discharge a firearm in the direction of a person he or she knows to be a peace officer. 720 ILCS 5/24-1.2(a)(3) (West 2008).

¶ 120    Another such offense is the knowing distribution of harmful materials to a minor (720 ILCS 5/11-21 (West 2006)). *Ward*, 215 Ill. 2d 317.

¶ 121    In *Ward*, the supreme court considered whether the State had established the elements of this offense beyond a reasonable doubt. The statute defines the elements of the offense as:

    "A person who, with knowledge that a person is a child, that is a person under 18 years of age, or who fails to exercise reasonable care in ascertaining the true age of a child, knowingly distributes to or sends or causes to be sent to, or exhibits to, or offers to distribute or exhibit any harmful material to a child, is guilty of a misdemeanor." 720 ILCS 5/11-21(a) (West 2000).

¶ 122    Having no difficulty construing this statutory language and without reference to any rules of statutory construction, the court declared that under this statute, the State was required to prove that defendant had *knowledge* that the victim was a child and that defendant *knowingly* distributed harmful material to her. *Ward*, 215 Ill. 2d at 322.

¶ 123    Although called upon to further interpret the requirements of the statute, the court noted defendant's sufficiency of the evidence argument devolved into an issue of statutory interpretation. *Ward*, 215 Ill. 2d at 324.

¶ 124    That is at most what can be said of defendant's sufficiency of the evidence argument; it has devolved into an issue of statutory interpretation, not an issue of whether the trial judge misconstrued the statute.

¶ 125    Section 4-5(a) specifically provides: "Knowledge of a material fact includes [an] awareness of the substantial probability that such fact exists." 720 ILCS 5/4-5(a) (West 2006). See also *Holt*, 271 Ill. App. 3d at 1025. Here, it can be inferred that defendant was aware of the substantial probability that the number she used belonged to another person. The evidence established that defendant used another person's (Mary Nodarse) social security number, and that defendant bought a car using that same number. There was also evidence defendant successfully used that number to get credit approval to buy the vehicle. Defendant used two social security numbers that day, one that she used on a loan application and one

-27-

that she put on an incomplete credit application. She admitted she had a social security number her mother gave her and she admitted that the other one she had was the one "she made up." Defendant also said she was not sure if the one her mother gave her was a "good" number. From this statement alone, it can be inferred she knew the other number was "good" and was another person's social security number. Defendant was also ready to purchase a car because she brought $1,000 with her that day to the dealership. Another person's social security number (assigned to Mary Nodarse) was indeed the number defendant used to facilitate that purchase. Thus, there was overwhelming proof of her knowledge that the number she used belonged to another person. *United States v. Holmes*, 595 F.3d 1255, 1258 (11th Cir. 2008) (defendant would not have sought credit using another person's identifying information if the defendant was not confident that the other person had an actual credit history).

¶ 126    I also disagree with the majority's suggestion that "the omitted element" was contested and "we cannot say" defendant's knowledge "was supported by overwhelming evidence." *Supra* ¶ 71. First, the knowledge element was not omitted; if it was omitted from the State's case, there should be an outright reversal of defendant's conviction. Second, the evidence was not contested. Defendant rested after the State's case without presenting any evidence. Her statements to the detective were uncontradicted and are telling of her guilty knowledge.

¶ 127    Defendant's statement that she made up Mary Nodarse's social security number was rejected by the trial judge as unbelievable and self-serving and for good reason. Social security numbers are arbitrary numbers and extremely difficult to guess or make up. The first three digits of an individual's social security number are based on the geographic region of residence at the time the number was assigned. The remaining digits are more or less randomly assigned. Social security numbers are not reused after a holder's death. See Jonathan J. Darrow & Stephen D. Lichtenstein, *"Do You Really Need My Social Security Number?" Data Collection Practices in the Digital Age*, 10 N.C. J.L. & Tech. 1 (2008).

¶ 128    Defendant's statement that she made up the number is not evidence of her lack of knowledge but instead is overwhelming evidence of her guilty knowledge. In the instant case, defendant actually, and not coincidentally, used an assigned social security number, out of the one billion possible combinations, that was of a woman with the same first name as her own, whose number originated from a specific geographic region, and who had established credit worthy of a $9,000 vehicle purchase.

¶ 129    Even more compelling is defendant's use and statement about a second social security number. Again, these statements were uncontradicted and show her knowledge because no individual is given two numbers unless one of them is fraudulently obtained. See *United States v. Rastegar*, 472 F.3d 1032 (8th Cir. 2007) (Social Security Administration policies and procedures are intended to prevent individuals from fraudulently obtaining or using multiple social security numbers). See *Donald v. Alabama Department of Public Safety*, 756 So. 2d 880, 881-82 (Ala. Civ. App. 1999) ("Because only one Social Security account number, generally known as a 'Social Security Number' is issued to an applicant, and because the Social Security Administration utilizes screening processes to prevent the issuance of duplicate numbers to the same person, '[l]ittle doubt exists as to the importance of the Social Security number as a unique identifier.' [Citations.]").

¶ 130    Defendant used multiple numbers when she went to purchase the car, which also overwhelmingly supports a finding that she had knowledge she was using another person's social security number.

¶ 131    The majority also states: "The trial court did not state that it found that defendant had the requisite knowledge." (Emphasis omitted.) *Supra* ¶ 46. However, the trial court does not have to state the defendant had the requisite knowledge, nor does it have to state its reasons for a finding of guilty. *People v. Curtis*, 296 Ill. App. 3d 991, 1000 (1998) ("The trier of fact in a bench trial is not required to mention everything–or, for that matter anything–that contributed to its verdict.")

¶ 132    The majority has referenced the prosecutor's interpretation of the statute throughout the opinion as if to equate the State's characterization of the statute to the trial judge. A trial judge is not required to reject comments made by the attorneys or disavow those comments to satisfy this court. Trial judges are presumed to recognize and disregard improper arguments made to them and consider only competent evidence in ruling on the merits of the case. *People v. Bowen*, 241 Ill. App. 3d 608, 621 (1993). Therefore, we presume the trial court disregarded any improper arguments and considered only competent evidence.

¶ 133    I also disagree with the decision of the majority to remand for a new trial. The defendant did not ask for a remand for a new trial, but requested a reversal because she contends the State never met its burden of proof. The opinion does not cite any relevant authority for the remand and I do not believe there is any under the facts of the case.

¶ 134    In remanding, the majority has compared this case to an instructional error. Despite this questionable analogy, I would still conclude that the trial court's decision should be affirmed.

¶ 135    In a recent decision, the Illinois Supreme Court in *People v. Washington* held that "instructional errors are deemed harmless if it is demonstrated that the result of the trial would not have been different had the jury been properly instructed." *People v. Washington*, 2012 IL 110283, ¶ 60. Stated another way, was the evidence of defendant's guilt so clear and convincing as to render the error harmless beyond a reasonable doubt? Because the evidence was so clear and convincing, the defendant's conviction should be affirmed.

¶ 136    Finally, it must be pointed out that at oral arguments on this case, the majority, not defense counsel, suggested that the trial judge misapplied the law. At that same time, the majority also suggested to defense counsel that by asking for other relief, the defendant was also asking for a new trial. Defense counsel said he was seeking a reversal of defendant's conviction, but agreed that a remand would be acceptable relief. The assistant State's Attorney opposed any notion that the appeal concerned the trial judge's misunderstanding of the law. The prosecutor argued that the only issue raised by defendant was the sufficiency of the evidence and that the prosecution had clearly established defendant's knowledge and identity beyond a reasonable doubt.

¶ 137    The majority has reached the decision to remand for a new trial where the defendant has not sought this relief and, more important, where the State has not had an opportunity to brief or respond to this unrequested relief and has been denied the right to be heard.

¶ 138    Based upon the record before us and case precedent, I am convinced that a reversal and remand should not be ordered under these particular facts.

¶ 139       Therefore, I dissent from the decision of the majority to reverse and remand for a new trial.